Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/15/2017 05:13 PM CDT

MIDWEST RENEWABLE ENERGY, LLC,
APPELLANT, v. AMERICAN ENGINEERING
TESTING, INC., ET AL., APPELLEES.

___ N.W.2d ___

Filed March 17, 2017.    No. S-16-122.

1. **Judgments: States.** Whether the law of Nebraska or that of another state controls the disposition of an issue by a Nebraska court is an issue of law.
2. **Jurisdiction: Statutes.** Subject matter jurisdiction and statutory interpretation present questions of law.
3. **Equity: Quiet Title.** A quiet title action sounds in equity.
4. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court resolves questions of law and fact independently of the trial court's determinations.
5. **Corporations: Partnerships.** In cases concerning limited liability companies, courts look to the principles of corporate law when addressing areas of similar functions, because a limited liability company is a hybrid of the partnership and corporate forms.
6. **Corporations: Actions.** At common law, a corporation's capacity to sue or be sued terminates when the corporation is legally dissolved.
7. **Corporations: Limitations of Actions: Abatement, Survival, and Revival.** Where a survival statute continues the existence of a corporation for a certain period after its dissolution for purposes of defending and prosecuting suits, no action can be maintained by or against it after the expiration of that period.
8. **Abatement, Survival, and Revival.** A survival statute operates on the right or claim itself.
9. **Corporations: States.** The internal affairs doctrine is a conflict-of-laws principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise, a corporation could be faced with conflicting demands.

- 74 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
MIDWEST RENEWABLE ENERGY v. AMERICAN ENGR. TESTING
Cite as 296 Neb. 73

10. **Corporations.** Neb. Rev. Stat. § 21-155 (Reissue 2012) incorporates the comments of the Revised Uniform Limited Liability Company Act, which it was patterned after.

11. **Corporations: States.** Neb. Rev. Stat. § 21-155 (Reissue 2012) codifies the internal affairs doctrine, Restatement (Second) of Conflict of Laws § 302 (1971), for limited liability companies.

12. **Corporations: States: Limitations of Actions.** The Restatement (Second) of Conflict of Laws § 302 (1971) applies during the life of the corporation and the winding-up process only. Once the effective date of dissolution has passed and the corporation is legally dissolved, however, the Restatement (Second) of Conflict of Laws § 299 (1971) governs.

13. **Corporations: States.** Under Neb. Rev. Stat. § 21-155 (Reissue 2012), courts apply the dictates of the Restatement (Second) of Conflict of Laws § 299 (1971) to require that the laws of a fully dissolved foreign limited liability corporation's state of incorporation governs its amenability.

14. **Statutes: States.** When the interpretation of another state's statute is a question of first impression, courts must interpret the statute by applying the statutory interpretation standards of that state.

15. **Judgments: Liens.** The lien of a judgment is merely an incident of the judgment and may not exist independently of the judgment. It cannot be assigned unless the judgment which it secures is also transferred.

16. **Judgments: Actions: Assignments.** A judgment, as a chose in action, is assignable.

17. **Assignments: Words and Phrases.** An assignment is a transfer vesting in the assignee all of the assignor's rights in the property which is the subject of the assignment.

18. **Assignments: Actions.** The assignee of a chose in action acquires no greater rights than those of the assignor, and takes it subject to all the defenses existent at the time.

19. **Assignments: Actions: Parties.** The assignee of a chose in action is the proper and only party who can maintain the suit thereon. The assignor loses all right to control or enforce an assigned right against the obligor.

20. **Parties.** Neb. Rev. Stat. § 25-323 (Reissue 2016) makes it the court's duty to require an indispensable party be added to the litigation sua sponte when one is absent and statutorily deprives a court of the authority to determine a controversy absent all indispensable parties.

21. **Jurisdiction: Words and Phrases.** Subject matter jurisdiction includes a court's power to hear and determine a case in the general class or category to which the proceedings in question belong, but it also includes a court's power to determine whether it has the authority to address a

- 75 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
MIDWEST RENEWABLE ENERGY v. AMERICAN ENGR. TESTING
Cite as 296 Neb. 73

particular question within a general class or category that it assumes to decide or to grant the particular relief requested.

22. **Jurisdiction: Parties: Waiver.** The absence of an indispensable party to a controversy deprives the court of subject matter jurisdiction to determine the controversy and cannot be waived.

23. **Jurisdiction: Appeal and Error.** When a lower court lacks the power, that is, the subject matter jurisdiction, to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

24. **Parties: Equity: Appeal and Error.** When it appears that all indispensable parties to a proper and complete determination of an equity cause were not before the district court, an appellate court will remand the cause for the purpose of having such parties brought in.

25. **Parties: Words and Phrases.** Necessary parties are parties who have an interest in the controversy, and should ordinarily be joined unless their interests are separable so that the court can, without injustice, proceed in their absence.

26. ____: ____. An indispensable party to a suit is one whose interest in the subject matter of the controversy is such that the controversy cannot be finally adjudicated without affecting the indispensable party's interest, or which is such that not to address the interest of the indispensable party would leave the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.

27. **Parties: Equity: Final Orders.** All persons whose rights will be directly affected by a decree in equity must be joined as parties in order that complete justice may be done and that there may be a final determination of the rights of all parties interested in the subject matter of the controversy.

28. **Parties: Words and Phrases.** All persons interested in the contract or property involved in a suit are necessary parties, and all persons whose interests therein may be affected by the decree in equity are indispensable parties.

Appeal from the District Court for Lincoln County: Richard A. Birch, Judge. Vacated and remanded with direction.

Dean J. Jungers for appellant.

William J. Troshynski, of Brouillette, Dugan & Troshynski, P.C., L.L.O., for appellees.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

FUNKE, J.

## I. INTRODUCTION

This appeal concerns a quiet title action brought in the district court for Lincoln County by the appellant, Midwest Renewable Energy, LLC (Midwest Renewable), against several entities and all known and unknown parties claiming an interest in its real property located in Lincoln County, Nebraska. Western Ethanol Company, LLC (Western Ethanol), was one of the named parties alleged to claim an interest in the real estate.

Western Ethanol obtained a judgment lien on Midwest Renewable's Lincoln County property after transcribing a California judgment against Midwest Renewable with the district court and filing a writ of execution on that judgment. Before Midwest Renewable filed its quiet title action, Western Ethanol dissolved and transferred its assets to its members. Douglas Vind, the managing member of Western Ethanol, claimed that Western Ethanol transferred the Midwest Renewable judgment to him, but he was never made a party to the litigation.

After a trial on the merits, the court ruled that Western Ethanol's judgment had been assigned to Vind and that the judgment lien against the real estate owned by Midwest Renewable in Lincoln County was still valid and subsisting. The court then dismissed with prejudice Midwest Renewable's action regarding Western Ethanol. Midwest Renewable filed a motion to alter or amend the court's order, which the court substantively overruled. Midwest Renewable appeals.

In order to consider this appeal, we must determine whether Western Ethanol, as a limited liability company, was amenable to the present action; whether Vind was an indispensable party to the controversies; and whether the court had subject matter jurisdiction to determine if the judgment and the judgment lien were assigned and remained valid and subsisting.

- 77 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
MIDWEST RENEWABLE ENERGY v. AMERICAN ENGR. TESTING
Cite as 296 Neb. 73

We hold that Western Ethanol was amenable to suit under Nevada law. Further, we decide that Vind was an indispensable party to the controversies decided by the court. Accordingly, his absence from the litigation deprived the court of subject matter jurisdiction over the issues of whether the judgment and the judgment lien were assigned and whether they were still valid and subsisting. Because the court erred in not making Vind a party to the action sua sponte, we vacate the court's memorandum opinion and judgment and remand the cause with direction to make Vind a party.

## II. BACKGROUND

Western Ethanol was a limited liability company formed under Nevada law and registered in California. In September 2010, it obtained a judgment against Midwest Renewable in California for $30,066.59, plus interest and costs. Western Ethanol transcribed the foreign judgment with the district court for Lincoln County in November 2010 and filed a writ of execution on the judgment in September 2011.

Western Ethanol filed its articles of dissolution in Nevada on November 12, 2013, and a certificate of cancellation in California on November 21, both effective on December 31. In both documents, Vind attested that Western Ethanol had distributed all of its assets to its members.

In September 2014, Midwest Renewable filed a petition to quiet title claims to its Lincoln County property, an ethanol manufacturing facility in Sutherland, Nebraska. In its petition, Midwest Renewable named nine specific entities, the property, and "'all persons having or claiming any interest in said real estate, real names unknown,'" under Neb. Rev. Stat. § 25-21,113 (Reissue 2016). Western Ethanol was one of the named parties.

On February 5, 2015, Midwest Renewable filed a motion for partial summary judgment against Western Ethanol and a motion for default judgment against all parties who had failed to answer or otherwise plead. Both motions were heard on February 23. At the hearing on Midwest Renewable's

- 78 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
MIDWEST RENEWABLE ENERGY v. AMERICAN ENGR. TESTING
Cite as 296 Neb. 73

motion for partial summary judgment, an affidavit executed by Vind—alleging that Western Ethanol had transferred its Midwest Renewable judgment to Vind—was entered into evidence. The record does not reflect that Vind filed an assignment of the judgment with the district court in the prior case where the judgment had been transcribed or provided notice of the assignment to Midwest Renewable. Neither Vind, the other parties, nor the court made Vind a party to the litigation.

The court entered a default judgment against three of the named parties and all of the unknown parties for failing to answer the complaint. The court denied Midwest Renewable's motion for partial summary judgment against Western Ethanol. Midwest Renewable settled with the other parties. The matter proceeded to trial against Western Ethanol as the only remaining defendant.

At trial, the court found, under Nevada law, that Western Ethanol could defend itself against the action by entering an appearance and asserting that its judgment lien had been assigned to Vind. The court also found that Western Ethanol had transferred its interest to Vind and that "he was then the interested party."

The court went on to address the merits of the quiet title action, because it determined that "the validity of any lien interest . . . Vind has in real estate of [Midwest Renewable] is dependent upon validity of Western Ethanol's judgment lien against [Midwest Renewable]. . . . Vind's interest in the property flows directly from the interest of Western Ethanol." The court stated that neither Western Ethanol's dissolution nor the failure to provide notice of the assignment to Midwest Renewable canceled the judgment lien. Therefore, the court ruled that the judgment lien "is and continues to be a valid and subsisting judgment lien against real estate owned by [Midwest Renewable] in Lincoln County, Nebraska." Accordingly, the court dismissed the quiet title action against Western Ethanol with prejudice.

Midwest Renewable then filed a motion to alter or amend the judgment, arguing that Nebraska law allows a corporation

- 79 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
MIDWEST RENEWABLE ENERGY v. AMERICAN ENGR. TESTING
Cite as 296 Neb. 73

to continue defending itself only during the winding-up process and that the court had already quieted the lien in Vind's name when it issued its default judgment against unnamed parties. The court overruled the motion, relying on its earlier order.

## III. ASSIGNMENTS OF ERROR

Midwest Renewable assigns, reordered and restated, as error the court's findings that (1) Western Ethanol owned the judgment in question on the date of trial and (2) the judgment and the judgment lien against Midwest Renewable's Lincoln County property are valid and subsisting. Additionally, it assigns error to (3) the court's dismissal of its complaint against Western Ethanol.

## IV. STANDARD OF REVIEW

[1,2] Whether the law of Nebraska or that of another state controls the disposition of an issue by a Nebraska court is an issue of law.[1] Subject matter jurisdiction and statutory interpretation present questions of law.[2]

[3,4] A quiet title action sounds in equity.[3] On appeal from an equity action, an appellate court resolves questions of law and fact independently of the trial court's determinations.[4]

## V. ANALYSIS

### 1. Western Ethanol Is Amenable Under Nevada Law

Midwest Renewable argues that under Nebraska law, Western Ethanol has dissolved and completed its winding up, so it is no longer a legal entity capable of defending itself.

---

[1] *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001), *abrogated in part on other grounds, Sutton v. Killham*, 285 Neb. 1, 825 N.W.2d 188 (2013). See, also, *Coral Prod. Corp. v. Central Resources*, 273 Neb. 379, 730 N.W.2d 357 (2007).

[2] *In re Estate of Evertson*, 295 Neb. 301, 889 N.W.2d 73 (2016).

[3] *Burnett v. Maddocks*, 294 Neb. 152, 881 N.W.2d 185 (2016).

[4] *Id.*

- 80 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
MIDWEST RENEWABLE ENERGY v. AMERICAN ENGR. TESTING
Cite as 296 Neb. 73

Alternatively, Midwest Renewable contends that if Nevada law applies, Western Ethanol would have to be defended on behalf of its trustees, in their name, because it is no longer a legal entity.

Western Ethanol argues that under Nevada law, it may defend itself against a lawsuit in its name for 2 years after filing its articles of dissolution. It contends that the capacity to sue or be sued after dissolution is part of the winding-up process and that winding up is an internal affair of a limited liability company. Western Ethanol argues that, accordingly, Nevada law should control because Nebraska allows a foreign limited liability company's state of formation to govern its internal affairs.

### (a) Amenability of Western Ethanol Is Dependent on Which State's Survival Statute Applies

[5] We have not addressed the issue of whether a dissolved limited liability company is amenable to suit. However, we have addressed the issue concerning corporations.[5] In cases concerning limited liability companies, we have looked to the principles of corporate law when addressing areas of similar functions, because a limited liability company is "'a hybrid of the partnership and corporate forms.'"[6]

[6] In *Christensen v. Boss*,[7] we considered a corporation's amenability to suit after voluntary dissolution. We stated:

At common law a corporation's capacity to sue or be sued terminates when the corporation is legally dissolved. . . .

Where a corporation has in fact been dissolved and no longer exists as a legal entity, the rule of its incapacity to

---

[5] See, *Van Pelt v. Greathouse*, 219 Neb. 478, 364 N.W.2d 14 (1985); *Christensen v. Boss*, 179 Neb. 429, 138 N.W.2d 716 (1965).

[6] See *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 936, 857 N.W.2d 816, 826 (2015).

[7] *Christensen, supra* note 5.

- 81 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
MIDWEST RENEWABLE ENERGY v. AMERICAN ENGR. TESTING
Cite as 296 Neb. 73

sue or be sued applies regardless of the mode of dissolu-
tion whether by judicial decree or otherwise. . . . In the
absence of statutory provisions to the contrary no action
at law can be maintained by or against it as a corporate
body or in its corporate name.[8]

[7,8] In *Van Pelt v. Greathouse*,[9] we interpreted Nebraska's
former survival statute that permitted corporations to maintain
actions by or against them after dissolution.[10] We clarified the
effect of survival statutes by stating:

[W]here a [survival] statute continues the existence of a
corporation for a certain period after its dissolution for
purposes of defending and prosecuting suits, no action
can be maintained by or against it after the expiration
of that period. In other words, while a statute of limita-
tions relates to the remedy only and not to substantive
rights, . . . a survival statute operates on the right or
claim itself.[11]

There are two types of survival statutes. The first type
"grant[s] corporations the power to sue and be sued as part of
their general winding up powers."[12] The second "enabl[es] suits
to be brought against, and defended by, a dissolved corporation
independent from the corporation's winding up activities and
powers."[13] Both types are "a limitation on the existence of the
corporation itself."[14]

Both Nebraska and Nevada have survival statutes for lim-
ited liability companies. Nebraska's statute extends companies'

---

[8] *Id*. at 435, 138 N.W.2d at 720. Accord *Eiche v. Blankenau*, 253 Neb. 255,
570 N.W.2d 190 (1997).

[9] *Van Pelt, supra* note 5.

[10] See Neb. Rev. Stat. § 21-20,104 (Reissue 1983).

[11] *Van Pelt, supra* note 5, 219 Neb. at 486, 364 N.W.2d at 20.

[12] 16A William Meade Fletcher, Fletcher Cyclopedia of the Law of
Corporations § 8144 at 313-14 (rev. ed. 2012).

[13] *Id*. at 314.

[14] *Christensen, supra* note 5, 179 Neb. at 439, 138 N.W.2d at 722. See,
generally, 16A Fletcher, *supra* note 12, § 8144.

ability to sue and be sued as part of the winding-up powers.[15] Nevada's statute, on the other hand, extends the existence of companies' ability to sue and be sued independently of the winding-up process, even after the winding-up process is complete.[16] Specifically, § 86.505(1) permits a dissolved limited liability company to continue to sue and be sued for 2 years after it has filed its articles of dissolution when the suit could have been initiated before the filing.

Here, Western Ethanol filed its articles of dissolution on November 12, 2013, which began its winding-up process. On December 31, the effective date of the articles of dissolution, Western Ethanol's winding-up process was complete. This action was initiated in September 2014. Accordingly, under Nebraska law, Western Ethanol would no longer be a legal entity capable of defending or enforcing its rights and any judgment against it would be unenforceable. However, under Nevada law, Western Ethanol would be able to defend itself, because its judgment lien was created before its dissolution and this action was initiated within 2 years of Western Ethanol's filing its articles of dissolution.

### (b) Nevada's Survival Statute Applies Under Internal Affairs Doctrine

[9] To determine whether Nebraska's or Nevada's survival statute should apply, we must consider the internal affairs doctrine. The internal affairs doctrine is a conflict-of-laws principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise, a corporation could be faced with conflicting demands.[17]

---

[15] Neb. Rev. Stat. § 21-148(b) (Reissue 2012).

[16] Nev. Rev. Stat. § 86.505 (2015).

[17] *Johnson v. Johnson*, 272 Neb. 263, 720 N.W.2d 20 (2006).

- 83 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
MIDWEST RENEWABLE ENERGY v. AMERICAN ENGR. TESTING
Cite as 296 Neb. 73

[10,11] As to limited liability companies, the internal affairs doctrine is codified under Neb. Rev. Stat. § 21-155 (Reissue 2012). Section 21-155 provides: "(ULLCA 801) (a) The law of the state or other jurisdiction under which a foreign limited liability company is formed governs: (1) the internal affairs of the company[.]" While § 21-155 references the Uniform Limited Liability Company Act,[18] the language of the statute and the section number referenced both show, instead, that it was patterned after the Revised Uniform Limited Liability Company Act,[19] which was adopted by Nebraska in 2011.[20] Accordingly, the Legislature incorporated the revised act's comments explaining each section.[21] In the comments to the revised act,[22] the drafters referenced the Restatement (Second) of Conflict of Laws § 302.[23]

The codification of the internal affairs doctrine for corporations, Neb. Rev. Stat. § 21-20,172 (Reissue 2012), also incorporates § 302 of the Restatement through the model code the Legislature adopted.[24] In *Johnson v. Johnson*,[25] we explained § 302 as follows:

> [It] recognizes that the local law of the state of incorporation applies to internal affairs, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which case, the local law of the other state will be applied. Where "internal

---

[18] See Unif. Limited Liability Company Act (1996), 6C U.L.A. 393 (2016).

[19] See Rev. Unif. Limited Liability Company Act (2006), 6C U.L.A. 223 (2016).

[20] See 2010 Neb. Laws, L.B. 888.

[21] See *Johnson, supra* note 17.

[22] Rev. Unif. Limited Liability Company Act, *supra* note 19, §§ 106 and 801.

[23] Restatement (Second) of Conflict of Laws § 302 (1971).

[24] See, *Johnson*, *supra* note 17; 4 Model Business Corporation Act Ann. § 15.05(c), official comment (3d ed. 2002).

[25] *Johnson, supra* note 17, 272 Neb. at 272, 720 N.W.2d at 28-29.

- 84 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
MIDWEST RENEWABLE ENERGY v. AMERICAN ENGR. TESTING
Cite as 296 Neb. 73

affairs" are concerned . . . the local law of the state of incorporation will be applied unless application of the local law of some other state is required by reason of the overriding interest of that other state in the issue to be decided.

The Restatement (Second) of Conflict of Laws also contains a provision that specifically addresses choice of law in the context of deciding which law should apply to a dissolved corporation's continuation for the purpose of suing or being sued.[26] Section 299 states:

[S]tatutes commonly provide that for a period of time after the termination or suspension of the corporate existence, suits may be brought by or against the corporation. . . .

A corporation whose existence has been terminated or suspended will usually be permitted to exercise in another state such powers as are accorded it by the state of incorporation even though the other state does not give similar powers to domestic corporations.[27]

Section 299 goes on to also address its interaction with § 302, stating:

A considerable period of time may elapse between the institution of the proceeding and the effective date of the termination or suspension of the corporate existence. The legal effect of acts done by the corporation during this period of time is determined in accordance with the law selected by application of the rules of §§ 301-302.[28]

[12,13] Accordingly, the Restatement itself clarifies that § 302's exception to the internal affairs doctrine applies during the life of the corporation and the winding-up process only. Once the effective date of dissolution has passed and the corporation is fully dissolved, however, at that point, § 299 is

---

[26] Restatement, *supra* note 23, § 299. See, also, Restatement (First) of Conflict of Laws § 158, comment *c*. (1934).

[27] Restatement, *supra* note 23, § 299, comment *e*. at 295-96.

[28] *Id.*, comment *h*. at 297.

- 85 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
MIDWEST RENEWABLE ENERGY v. AMERICAN ENGR. TESTING
Cite as 296 Neb. 73

applicable. Therefore, under § 21-155, the internal affairs doctrine requires that the law of a fully dissolved foreign limited liability corporation's state of incorporation govern its amenability. This conclusion is supported both by other courts that have adopted the use of § 299 specifically[29] and by courts that have generally held that the law of the state of incorporation should apply to fully dissolved corporations.[30]

Western Ethanol was fully dissolved as of December 31, 2013. Therefore, we apply Nevada's statute to determine Western Ethanol's capacity to sue or be sued. As discussed above, this action commenced within 2 years of Western Ethanol's filing its articles of dissolution. Therefore, it may defend itself in the present action.

### (c) Western Ethanol May Defend Itself in Its Name

Midwest Renewable also argues that Nevada law requires the action be defended in the name of the dissolved company's trustees.

Nev. Rev. Stat. § 86.541(2) (2015) states:

> The manager or managers in office at the time of dissolution . . . are thereafter trustees of the dissolved company, with full power to prosecute and defend suits, actions, proceedings and claims of any kind or character by or against the company . . . and to do every other act to wind up and liquidate its business and affairs, but not for the purpose of continuing the business for which the company was established.

[14] Nevada courts have not interpreted § 86.541. When the interpretation of another state's statute is a question of first impression, we must interpret the statute by applying the standards of Nevada law.[31] Under Nevada law, "[s]tatutory

---

[29] *Lilliquist v. Copes-Vulcan, Inc.*, 21 A.3d 1233 (2011).

[30] *In re All Cases Against Sager Corp.*, 132 Ohio St. 3d 5, 967 N.E.2d 1203 (2012); 16A Fletcher, *supra* note 12, § 8142.

[31] See *Coral Prod. Corp., supra* note 1.

- 86 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
MIDWEST RENEWABLE ENERGY v. AMERICAN ENGR. TESTING
Cite as 296 Neb. 73

language must be given its plain meaning if it is clear and unambiguous."[32] Further, the "court 'cannot expand or modify . . . statutory language' to impose requirements the Legislature did not."[33] Additionally, it is a general principle of law that statutes in derogation of the common law are strictly construed.[34] Nevada has recognized that at common law, a corporation's capacity to be sued terminates at dissolution.[35] Accordingly, statutes authorizing postdissolution action against companies should be strictly construed.

The plain language of § 86.541(2) gives trustees the full power to defend suits on behalf of a dissolved company. However, there is no requirement that a dissolved company's defense must be pursued solely by its trustees in their name. We cannot read such a requirement into the statute. Therefore, Western Ethanol is entitled to defend itself in its name.

## 2. District Court Lacked Subject Matter Jurisdiction to Determine Whether Judgment and Judgment Lien Had Been Assigned to Vind and Whether They Were Still Valid and Subsisting, Because Vind Is Indispensable Party to Such Controversies

Midwest Renewable argues that Western Ethanol has no interest in the judgment because it transferred all of its assets, including the judgment, to Vind and its other members on or before December 31, 2013. Accordingly, it contends that Western Ethanol's claim should be quieted against its Lincoln County property. Further, Midwest Renewable argues that as

---

[32] *Pacific Western Bank v. Eighth Jud. Dist.*, ___ Nev. ___, ___, 383 P.3d 252, 255 (2016).

[33] *Wingco v. Gov't Emps. Ins. Co.*, ___ Nev. ___, ___, 321 P.3d 855, 856 (2014).

[34] *Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, ___ Nev. ___, 366 P.3d 1105 (2016).

[35] *Canarelli v. Dist. Ct.*, 127 Nev. 808, 265 P.3d 673 (2011), citing 16A Fletcher, *supra* note 12, § 8142.

- 87 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
296 NEBRASKA REPORTS
MIDWEST RENEWABLE ENERGY v. AMERICAN ENGR. TESTING
Cite as 296 Neb. 73

a result of the assignment, Vind owns the judgment but his lien on the Lincoln County property was extinguished by the court's default judgment against all unnamed parties.

Western Ethanol asserts that it continues to own the judgment and judgment lien. While it acknowledges that its assets were transferred upon its dissolution, including the judgment transferred to Vind, its position is based on two arguments. First, it contends that a transfer is not an assignment. Second, it argues that a judgment cannot actually be transferred, because it is not an asset. Western Ethanol, however, does admit that a judgment is a chose in action. Additionally, Western Ethanol argues that the judgment and the judgment lien are still valid.

(a) Western Ethanol's Judgment and
Judgment Lien Are Assignable

[15,16] The lien of a judgment is merely an incident of the judgment and may not exist independently of the judgment.[36] Accordingly, "[t]he lien [of a judgment] cannot be assigned unless the [judgment] which it secures is [also] transferred."[37] Black's Law Dictionary defines a "chose in action" as the "right to bring an action to recover a debt [or] money."[38] The law is clear that a judgment, as a chose in action, is assignable.[39]

[17] An assignment is a transfer vesting in the assignee all of the assignor's rights in the property which is the subject of the assignment.[40] "An assignment becomes effective when it

---

[36] *Mousel Law Firm v. The Townhouse, Inc.*, 259 Neb. 113, 608 N.W.2d 571 (2000), citing 50 C.J.S. *Judgments* § 552 (1997).

[37] *Cache Nat. Bank v. Lusher*, 882 P.2d 952, 961 n.16 (Colo. 1994), citing *Lewis v. Booth*, 3 Cal. 2d 345, 44 P.2d 560 (1935). Accord *Goodman v. Pence*, 21 Neb. 459, 32 N.W. 219 (1887).

[38] Black's Law Dictionary 294 (10th ed. 2014).

[39] *State v. Holt County*, 89 Neb. 445, 131 N.W. 960 (1911). See, also, *Boarman v. Boarman*, 210 W. Va. 155, 556 S.E.2d 800 (2001); 46 Am. Jur. 2d *Judgments* § 431 (2006). Cf. Neb. Rev. Stat. §§ 25-302 to 25-304 (Reissue 2016).

[40] *Krohn v. Gardner*, 248 Neb. 210, 533 N.W.2d 95 (1995). See, also, Black's Law Dictionary 142 (10th ed. 2014) (defining "assign").

- 88 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
MIDWEST RENEWABLE ENERGY v. AMERICAN ENGR. TESTING
Cite as 296 Neb. 73

is made . . . ."[41] Additionally, notice of the assignment is not essential to the validity of the assignment.[42]

[18,19] However, "the assignee of a chose in action . . . acquires no greater rights than those of the assignor, and takes it subject to all the defenses existent at the time."[43] "The assignee of a thing in action may maintain an action thereon in the assignee's own name and behalf, without the name of the assignor."[44] Accordingly, the assignee is the proper and only party who can maintain the suit thereon.[45] Conversely, "[t]he assignor loses all right to control or enforce an assigned right against the obligor."[46]

Western Ethanol's argument that its judgment could not be assigned is, therefore, without merit. Further, if Midwest Renewable is correct in arguing that Western Ethanol's judgment was assigned, then it is also correct that Western Ethanol has no interest in the judgment or judgment lien. Moreover, any defenses that Midwest Renewable would have against the validity of the judgment or judgment lien would also have been assigned and could be raised only against the assignee. Therefore, Vind would be the only party capable of enforcing or defending the judgment and judgment lien against Midwest Renewable.

### (b) Absence of Indispensable Party Deprives Court of Subject Matter Jurisdiction

The parties did not raise, at trial or on appeal, the issue of whether Vind should have been made a party to this action.

---

[41] 6A C.J.S. *Assignments* § 89 at 446 (2016).

[42] *Id.*, § 81; 46 Am. Jur. 2d, *supra* note 39, § 433. See, also, *Holt County, supra* note 39.

[43] *Cronkleton v. Hastings Theatre & Realty Corporation*, 134 Neb. 168, 173, 278 N.W. 144, 147 (1938). See § 25-303.

[44] § 25-302.

[45] *Krohn, supra* note 40. See, also, Neb. Rev. Stat. § 25-301 (Reissue 2016).

[46] *Ryder Truck Rental v. Transportation Equip. Co.*, 215 Neb. 458, 461, 339 N.W.2d 283, 285 (1983). See, also, 46 Am. Jur. 2d, *supra* note 39, § 439.

- 89 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
MIDWEST RENEWABLE ENERGY v. AMERICAN ENGR. TESTING
Cite as 296 Neb. 73

The district court, however, found that Vind, not Western Ethanol, had the sole interest in the judgment and acknowledged that the parties and Vind failed to make Vind a party to the suit.

[20-22] Neb. Rev. Stat. § 25-323 (Reissue 2016) makes it the court's duty to require an indispensable party be added to the litigation sua sponte when one is absent and statutorily deprives a court of the authority to determine a controversy absent all indispensable parties.[47] Subject matter jurisdiction includes a court's power to hear and determine a case in the general class or category to which the proceedings in question belong, but it also includes a court's power to determine whether it has the authority to address a particular question within a general class or category that it assumes to decide or to grant the particular relief requested.[48] Therefore, the absence of an indispensable party to a controversy deprives the court of subject matter jurisdiction to determine the controversy and cannot be waived.[49]

[23,24] When a lower court lacks the power, that is, the subject matter jurisdiction, to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[50] "'[W]hen it appears that all indispensable parties to a proper and complete determination of an equity cause were not before the district court, [an appellate court] will remand the cause for the purpose of having such parties brought in.'"[51]

---

[47] See, e.g., *Cunningham v. Brewer*, 144 Neb. 211, 16 N.W.2d 533 (1944).

[48] See *In re Interest of Trey H.*, 281 Neb. 760, 798 N.W.2d 607 (2011). See, also, *Robertson v. School Dist. No. 17*, 252 Neb. 103, 560 N.W.2d 469 (1997).

[49] See *Pestal v. Malone*, 275 Neb. 891, 750 N.W.2d 350 (2008).

[50] *In re Estate of Evertson, supra* note 2.

[51] See *Pestal, supra* note 49, 275 Neb. at 896, 750 N.W.2d at 355, quoting *Whitaker v. Gering Irr. Dist.*, 183 Neb. 290, 160 N.W.2d 186 (1968).

### (c) Vind Was Indispensable Party to Determining
### Whether Judgment and Judgment Lien Were
### Assigned to Him and Whether They
### Are Valid and Subsisting

Section 25-323 codifies the concept of compulsory joinder in Nebraska, stating, in relevant part:

The court may determine any controversy between parties before it when it can be done without prejudice to the rights of others or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in.

[25] The language of § 25-323 tracks the traditional distinction between the necessary and indispensable parties. The South Dakota Supreme Court recently restated the traditional difference between such parties as follows:

"'[N]ecessary parties[]' [are parties] who have an interest in the controversy, and should ordinarily be joined unless their interests are separable so that the court can, without injustice, proceed in their absence[.] '[I]ndispensable parties[]' [are parties] whose interest is such that a final decree cannot be entered without affecting them, or that termination of controversy in their absence would be inconsistent with equity."

. . . The inclusion of a necessary party is within the trial court's discretion. . . . However, there is no discretion as to the inclusion of an indispensable party.[52]

[26] Similarly, the first clause of our statute makes the inclusion of necessary parties discretionary when a controversy of interest to them is severable from their rights. The second clause, however, mandates the district court order indispensable parties be brought into the controversy. We have long held:

An indispensable or necessary party to a suit is one whose interest in the subject matter of the controversy is such

---

[52] *J.K. Dean, Inc. v. KSD, Inc.*, 709 N.W.2d 22, 25 (S.D. 2005).

- 91 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
MIDWEST RENEWABLE ENERGY v. AMERICAN ENGR. TESTING
Cite as 296 Neb. 73

that the controversy cannot be finally adjudicated without affecting the indispensable party's interest, or which is such that not to address the interest of the indispensable party would leave the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.[53]

While our definition of indispensable parties has often treated necessary parties hand in hand, it is clear that this definition was derived from the traditional definition of indispensable parties and applies to the second clause of § 25-323. Therefore, this definition applies to indispensable parties only.

[27,28] We have held that "all persons whose rights will be directly affected by a decree in equity must be joined as parties in order that complete justice may be done and that there may be a final determination of the rights of all parties interested in the subject matter of the controversy."[54] Based on our distinction of parties above, we consider all persons interested in the contract or property involved in the suit to be necessary parties, and all persons whose interests therein may be affected by the decree in equity to be indispensable parties.

Here, Midwest Renewable seeks to quiet the title of all parties interested in its Lincoln County property. It specifically attacked the lien executed on Western Ethanol's judgment by naming Western Ethanol as a party to the action, having no greater information as to the owner of the judgment. Western Ethanol continues to assert that it is the owner of the judgment. However, once Western Ethanol's articles of dissolution and Vind's affidavit were entered into evidence at the hearing on Midwest Renewable's motion for partial summary judgment, a question as to the owner of the judgment and the judgment lien arose.

---

[53] *American Nat. Bank v. Medved*, 281 Neb. 799, 806, 801 N.W.2d 230, 237 (2011).

[54] *Reed v. Reed*, 277 Neb. 391, 399, 763 N.W.2d 686, 693 (2009).

The court could not make a determination as to the owner of the judgment and the judgment lien without affecting Vind's ownership rights. Accordingly, he was an indispensable party to that determination. We conclude that the district court erred in not requiring that Vind be made a party to the action before deciding the issue. Therefore, the court lacked subject matter jurisdiction to make a determination as to the owner of the judgment and the judgment lien.

Additionally, as discussed above, if Vind was assigned the judgment and the judgment lien, then he alone could enforce or defend them. Accordingly, the court could not make a determination as to the validity of the judgment or the judgment lien without affecting Vind's rights. Therefore, Vind's absence, as an indispensable party, deprived the court of the subject matter jurisdiction to determine the validity of the judgment and the judgment lien as well.

Moreover, because motions for quiet title sound in equity, dismissing Midwest Renewable's complaint regarding Western Ethanol and failing to add Vind were inconsistent with equity and good conscience, because that prevented a final determination as to whether the lien created by Western Ethanol remained as a cloud on Midwest Renewable's Lincoln County property. Further, it neglected to settle Midwest Renewable's claim that Vind cannot enforce the lien if he owns it, because the court's earlier default judgment against unnamed parties in this case also requires Vind's participation.

Midwest Renewable claims that because it named "all persons . . . real names unknown" as defendants in the caption of its complaint and constructively served such defendants, Vind had constructive notice of the litigation and was thus converted into a party. We do not agree with Midwest Renewable's assessment of the record or the applicable law.

Contrary to Midwest Renewable's assertion, Vind was not an unknown person. As previously mentioned, the hearings on Midwest Renewable's motions for default judgment and partial summary judgment were heard contemporaneously. At that

hearing, Western Ethanol introduced into evidence the affidavit of Vind claiming he was the actual owner of the judgment. Under these circumstances, Vind's interest in the property was readily apparent. In order to properly resolve or rule upon Midwest Renewable's rights, Vind should have been joined as a named party.

## VI. CONCLUSION

Under Nevada law, Western Ethanol remained amenable to this action, because the cause existed prior to its dissolution and the action was commenced within 2 years of the filing of its articles of dissolution. Although Western Ethanol had transferred its judgment and judgment lien upon dissolution, it continues to argue that it owns both. Vind is an indispensable party to the controversy of who owns the judgment and the judgment lien and whether both remain valid and subsisting, because each controversy directly affects his rights as the alleged assignee. Accordingly, Vind's absence deprived the court of subject matter jurisdiction to consider those issues. Therefore, we vacate the court's memorandum opinion and judgment and remand the cause with direction for the district court to order Vind be named a party to this action.

VACATED AND REMANDED WITH DIRECTION.