IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

SANDIN V. SANDIN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JULIE A. SANDIN, APPELLEE,

V.

CHRISTOPHER W. SANDIN, APPELLANT.

Filed July 9, 2024.    No. A-23-678.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed as modified.

Michael W. Milone, of Koukol Johnson Schmit & Milone, L.L.C., for appellant.

Terrance A. Poppe and Gina M. Elliott, of Morrow, Poppe, Watermeier & Lonowski, P.C., for appellee.

PIRTLE, Chief Judge, and RIEDMANN and BISHOP, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Christopher W. Sandin appeals the decree entered by the district court for Lancaster County dissolving his marriage to Julie A. Sandin. Based on the reasons that follow, we affirm as modified.

### BACKGROUND

Christopher and Julie were married in September 1992. Julie filed a complaint for dissolution of marriage in November 2021. The parties had two children together, both of which had reached the age of majority at the time the complaint was filed. One of the children has cerebral palsy and cannot live on his own. Julie planned to be his primary caregiver.

- 1 -

At the time of trial, Christopher had been working as a self-employed taxi driver for 9 years, earning about $75,000 in gross annual income. Julie was working part-time as a hair stylist earning $15,000 to $30,000 annually.

The parties owned a home valued between $268,000 and $276,000. They also owned 4 vehicles--a motorcycle, two pick-up trucks, and a minivan.

Christopher had two 401K retirement accounts from two previous employers. The first 401K had a balance of $246,636 in December 2021, and that approximate balance still existed at the time of trial. The second 401K had a balance of $319,773 on January 1, 2021. The balance was only $1,000 at the time of trial. Starting in January 2021, Christopher withdrew over $300,000 from the second account to fund his gambling habit at casinos. He opened a separate account in May 2021 to deposit the funds he withdrew from his 401K. Julie testified she did not know Christopher had withdrawn funds from his retirement account and did not know about the separate account. She stated she had accompanied him to a casino on two occasions near the end of their marriage but was unaware of the extent of Christopher's spending on gambling. Christopher testified Julie was aware of his gambling and had access to all the parties' financial records.

Christopher asked the trial court to use reduced values of the retirement accounts in the property division to account for the tax consequences that resulted from the withdrawals he made from his retirement accounts. He testified that 25 percent of whatever amount he withdrew from the retirement accounts was automatically withheld for taxes. Julie opposed valuing the retirement accounts by using a 25 percent discount for tax consequences. For reasons Christopher did not explain, he has not filed tax returns for 15 to 20 years.

Sometime between 2016 and 2017, Christopher and Julie invested $100,000 into a company called "Omalink," which provided transportation between Lincoln and Omaha. Julie testified she told Christopher the investment was a bad idea, and she did not agree to it. She stated that Christopher forced or guilted her into contributing to the investment. Christopher testified that Julie agreed to the investment and even worked as an employee for the company at various points. Christopher testified the money for the investment came from marital assets.

The parties' relationship with Omalink ended in 2017 or 2018 when they were "cut out" or "kicked out" of the business. Christopher testified that to the best of his knowledge, Omalink was still in operation. He testified he did not believe he had an ownership interest in Omalink and he received no return on the investment. He further testified that he had not attempted to recover any of the money invested through legal action or otherwise, and at the time of trial had no plans to do so. Christopher considered the investment a marital loss. He also testified he had no way to value any legal claim he or Julie might have against Omalink.

Julie testified that her marriage was irretrievably broken in October 2019. Specifically, she testified that certain photos she found on Christopher's phone, as well as his anger issues, were the triggering events for the end of the marriage. At that time, Julie gave Christopher her wedding ring, told him she was done with the marriage, began sleeping on the couch, and consulted with a divorce lawyer for the first time. Christopher moved out of the marital home in October 2021 when Julie filed for a protection order.

Christopher testified that he attempted to access and inventory personal property in the marital home at least twice before trial. During his first attempt, Julie refused to let Christopher into the home. On the second attempt, Julie had two private security guards present to prevent

Christopher from removing anything. Julie admitted she prevented Christopher from removing any property from the home the second time.

Following trial, the trial court entered a decree finding that the marriage began undergoing an irreconcilable breakdown in 2019 and after that Christopher began gambling away the marital assets, including $300,000 from one of his 401K accounts, and concealed it from Julie. Therefore, the court determined it would value the marital estate prior to Christopher's withdrawal of substantial sums in 2021. The court further refused to reduce those values by 25 percent to account for tax consequences. In its division of assets and debts, the court found the Omalink investment was a marital asset, valued it at $100,000, and awarded it to Christopher. The division of the marital estate resulted in an equalization payment by Christopher to Julie in the amount of $136,321. Regarding personal property, the court ordered that each party would keep the property in his/her possession, but Christopher would be allowed to access the marital home to retrieve specific items "on Saturday, July 1, 2023, from 1:00 to 3:00 p.m. or at a date and time mutually agreed to by the parties." The trial court awarded Julie spousal support in the amount of $500 per month for 120 months and ordered Christopher to pay Julie's attorney fees totaling $7,409.12.

Christopher filed a motion for new trial, which was denied.

## ASSIGNMENTS OF ERROR

Christopher assigns the trial court erred in (1) permitting Julie to put on evidence of Omalink as a divisible marital asset without properly disclosing it before trial in violation of court rules, (2) finding the parties' Omalink investment was a marital asset subject to property division, (3) attributing a value of $100,000 to the parties' Omalink investment without sufficient evidence of its value, (4) failing to award him sufficient time or opportunity to remove his personal property from the marital home, and (5) dividing and awarding Julie property of third parties who were not named or involved in the divorce proceedings.

## STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Knapp v. Knapp*, 32 Neb. App. 669, 4 N.W.3d 415 (2024). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.* A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## ANALYSIS

*Omalink Investment.*

Christopher first assigns the trial court erred in permitting Julie to present evidence regarding the Omalink investment without properly disclosing it before trial. Before trial, Julie submitted a pretrial memorandum to the trial court identifying the issues for trial, as required by Lancaster County local rules. See Dist. Ct. Local R. 3-9(D) (requiring parties to submit an accurate pretrial memorandum form that may not be amended within 5 days of trial). The pretrial memorandum did not identify the Omalink investment as an issue for trial. Therefore, Christopher

claims Julie violated local court rules, and that he was unaware the Omalink investment would be an issue at trial, making it an "unfair surprise." Brief for appellant at 37.

We first note that during Christopher's testimony, he was asked if he remembered being asked during his deposition about the Omalink investment, and he indicated that he did remember. Because the Omalink investment was discussed during Christopher's deposition, he was aware that the Omalink investment was an issue that could be brought up at trial.

Regarding the allegation that Julie violated Dist. Ct. Local R. 3-9(D) by not including the Omalink investment in her pretrial memorandum, district courts generally retain considerable discretion with respect to the procedures used in their courtrooms. See *Ecker v. E & A Consulting Group*, 302 Neb. 578, 924 N.W.2d 671 (2019). In appropriate circumstances where no injustice would result, the district court may exercise its inherent power to waive its own rules. *Id.* Christopher and Julie both testified about the Omalink investment at trial. Julie also submitted a proposed property division that awarded the Omalink investment to Christopher at a value of $100,000. The only objection Christopher made to evidence related to the Omalink investment was to a receipt for a cashier's check to the individual who founded Omalink.

There was no injustice in the trial court allowing Julie to present evidence regarding the Omalink investment. It was within the district court's authority to waive its own rules, and as previously stated, Christopher was aware the Omalink investment could be an issue at trial. This assignment of error fails.

Christopher next assigns the trial court erred in finding the parties' Omalink investment was a marital asset subject to property division. He contends that the parties invested $100,000 in Omalink and were "cut out" of their relationship with the company a few years later. Christopher was not aware that the parties had any ownership interest in Omalink and they had not received any return on the investment. Christopher considered the entire $100,000 investment a marital loss. He contends the parties offered no evidence suggesting the Omalink investment was a marital asset that could be divided. Instead, he argues the Omalink investment is only a "potential, unfiled, unliquidated, contingent cause of action" against Omalink that cannot be divided. Brief for appellant at 31.

Neb. Rev. Stat. § 42-365 (Reissue 2016) authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances. *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023). In a marital dissolution action, the purpose of a property division is to distribute the marital assets equitably between the parties. *Id.*

Under § 42-365, the equitable division of property is a three-step process. *Karas v. Karas*, 314 Neb. 857, 993 N.W.2d 473 (2023). The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage. *Id.* The second step is to value the marital assets and marital liabilities of the parties. *Id.* And the third step is to calculate and divide the net marital estate equitably between the parties. *Id.* Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. *Id.*

Christopher contends the Omalink investment is not a marital asset subject to division, but rather a marital loss that should not be considered in the division of property. There was little evidence presented by either party regarding the details of the Omalink investment. However, the evidence was undisputed that marital funds were used to invest in Omalink. Accordingly, the

investment was a marital asset since it was made with marital funds, regardless of whether Julie agreed with it or not. We find no abuse of discretion in the trial court's determination that the Omalink investment was a marital asset subject to property division.

Christopher's final assignment of error regarding the Omalink investment is that the trial court erred in attributing a value of $100,000 to it without sufficient evidence of its value. He argues that evidence of the purchase price, or in this case the amount of the investment, does not prove its value. He further argues the Omalink investment is nothing more than a future cause of action and the parties presented no evidence of critical information necessary to establish its value as a cause of action. He contends that even if the Omalink investment is a divisible asset, it should have a $0 value.

Both parties agreed that the original amount of the investment was $100,000. Again, there was little evidence presented regarding the details of the Omalink investment, and there was no evidence offered by either party to support the investment's current value. Julie proposed that the amount invested was the value that should be used in the property division. Christopher argued that the value should be $0 because he was no longer involved in the business. The evidence is unclear whether the $100,000 was a capital contribution or whether it was merely an investment.

Although there may be a dispute as to the value of an item, so long as there is evidence to support the court's valuation, a court's valuation of the property will not be considered an abuse of discretion. See *Staman v. Staman*, 225 Neb. 864, 408 N.W.2d 320 (1987). See, also, *Schmeidler v. Schmeidler*, 25 Neb. App. 802, 912 N.W.2d 278 (2018), *disapproved on other grounds, State on behalf of Kaaden S. v. Jeffrey T.*, 303 Neb. 933, 932 N.W.2d 692 (2019) (determining it was abuse of discretion to accept value without supporting evidence). In the present case, neither party presented any evidence to show the current value of the investment. Accordingly, we find the trial court's valuation of $100,000 to be an abuse of discretion. We modify the property division to remove the $100,000 Omalink asset from Christopher's column. We further determine that each party should be awarded a 50 percent share of whatever amount may be recouped from Omalink, without placing any value in the property division calculation.

Based on the foregoing modifications, the marital assets awarded to Christopher equal $559,492; the marital assets awarded to Julie remain the same at $386,849. This results in Christopher being awarded $172,643 more in assets than Julie. Accordingly, we modify the equalization payment due from Christopher to Julie to a total of $86,321.50.

*Removal of Personal Property.*

Christopher next assigns the trial court erred in failing to award him sufficient time or opportunity to remove his personal property from the marital home. He contends that the few hours the court allotted him was not enough time to retrieve items from the home and he suggests that this court should give him additional time and opportunities to retrieve his property.

The trial court allowed Christopher access to the marital home on a specific day for a 2-hour period, or on a date and time mutually agreed to by the parties, to retrieve specific items. Christopher assigns the trial court did not give him enough time to remove his personal property, but also argues Julie denied him access to his personal property after the decree was entered. Based on the record before us, we cannot say that the district court abused its discretion in allowing Christopher a 2-hour period to retrieve specific items of personal property. If Julie interfered with

Christopher retrieving his property during the day and time established by the court, he could have filed a contempt action. This assignment of error fails.

*Indispensable Party.*

Christopher last assigns the trial court erred by dividing and awarding Julie property belonging to third parties who were not named or involved in the divorce proceedings. Specifically, he alleges the court awarded property located in the marital home that belonged to the estate of Burdette Sandin (Christopher's father), making the estate an indispensable party. The estate filed a motion to intervene after the decree was entered and the court denied the motion.

An indispensable party is one whose interest in the subject matter of the controversy is such that the controversy cannot be finally adjudicated without affecting the indispensable party's interest, or which is such that not to address the interest of the indispensable party would leave the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. *Braun v. Braun*, 306 Neb. 890, 947 N.W.2d 694 (2020). The absence of an indispensable party to a controversy deprives the court of subject matter jurisdiction to determine the controversy and cannot be waived. *Midwest Renewable Energy v. American Engr. Testing*, 296 Neb. 73, 894 N.W.2d 221 (2017).

Based on the record before us, we do not conclude that the estate has an interest in the parties' dissolution such that the dissolution cannot be finally adjudicated without affecting the estate's interest. If the estate truly has an interest in property located in the marital home, it could bring a separate action. In fact, at the hearing on the motion for new trial, counsel for both parties acknowledged that a separate action has been filed by the estate. This assignment of error fails.

CONCLUSION

We conclude the trial court abused its discretion in its valuation of the parties' Omalink investment and we modify the property distribution and equalization payment as explained above. The trial court's decree of dissolution is affirmed in all other respects.

AFFIRMED AS MODIFIED.