Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/04/2023 09:11 AM CDT

Leslie Irene Karas, appellee, v.
Brian Anthony Karas, appellant.

___ N.W.2d ___

Filed August 4, 2023.    No. S-22-693.

1. **Divorce: Property Division: Alimony.** In an action for dissolution of marriage, Neb. Rev. Stat. § 42-365 (Reissue 2016) allows the district court to order payment of such alimony by one party to the other and division of property as may be reasonable.
2. **Property Division: Alimony: Appeal and Error.** An appellate court reviews a district court's determinations of alimony and division of property de novo on the record to determine whether there has been an abuse of discretion.
3. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.
4. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
5. **Alimony: Time.** The reasonable duration of an alimony award depends on the specific facts in a given case, often the amount of time required to allow the recipient spouse to support himself or herself.
6. **Alimony.** Alimony should not be used to equalize the incomes of the parties or to punish one of the parties.
7. ____. The primary purpose of alimony is to assist an ex-spouse for a period of time necessary for that individual to secure his or her own means of support.
8. **Alimony: Appeal and Error.** In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial

court's award is untenable such as to deprive a party of a substantial right or just result with the ultimate criterion being reasonableness.

9. **Divorce: Property Division.** Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process: (1) classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage; (2) value the marital assets and marital liabilities of the parties; (3) calculate and divide the net marital estate equitably between the parties.

10. ____: ____. Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate.

11. **Property Division.** Marital debt includes only those obligations incurred during the marriage for the joint benefit of the parties.

12. **Divorce: Property Division: Proof.** The burden of proof to show that property should not be included in the marital estate in a dissolution decree rests with the party claiming that that property is nonmarital.

13. **Divorce: Property Division: Equity.** The purpose of assigning a date of valuation in a dissolution decree is to ensure that the marital estate is equitably divided.

14. **Divorce: Property Division.** The date for valuation of property included in the marital estate in a dissolution decree must be rationally related to the property being divided.

15. ____: ____. The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.

16. ____: ____. A district court generally has discretion in a dissolution decree to award each spouse between one-third and one-half of the marital estate.

17. **Divorce: Property Settlement Agreements: Final Orders.** A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself.

18. **Judgments: Final Orders.** It is inherent to a judgment's finality that all are bound by the original language used, and all ought to interpret the language the same way.

19. **Property Division.** Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the court may take the economic circumstances of the parties into account and is not limited to the assets divided as part of the marital estate.

20. ____. There is nothing in the language of Neb. Rev. Stat. § 42-365 (Reissue 2016) that prevents the court from ordering an equalization payment without awarding liquid assets from the marital estate.

Appeal from the District Court for Sarpy County: Michael A. Smith, Judge. Affirmed.

Adam R. Little, of Nebraska Legal Group, for appellant.

April M. Lucas, Susan Reff, and Tracy Hightower-Henne, of Hightower Reff Law, L.L.C., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## I. INTRODUCTION

The district court entered a stipulated decree of dissolution of marriage based on a written agreement between a husband and wife. Due to inaccurate information during settlement negotiations, which ultimately resulted in the failure of a portion of the stipulated agreement, the district court granted the husband's motion to alter or amend. The court vacated portions of the stipulated decree concerning spousal support and division of property, and it ordered the wife to pay alimony for the life of the parties and the equitable division of property as calculated by the court. On the wife's motion to alter or amend, the court recalculated the division of property and limited the alimony award to 15 years. The husband appeals, arguing that the court abused its discretion by limiting the alimony award to 15 years, dividing the marital estate by including several postseparation debts, treating monthly payments from the wife as property equalization instead of alimony, and ordering him to pay a substantial equalization payment when he did not possess the resources to do so. Based upon the following reasoning, we disagree with the husband's arguments and affirm.

## II. BACKGROUND

Leslie Irene Karas and Brian Anthony Karas were married in September 1994. The parties separated on March 28, 2019. Leslie filed for dissolution of their marriage on that same

day, and Brian filed an answer and counterclaim shortly thereafter. The Karas' have four children born of their marriage, two of whom had reached the age of majority at the time of the decree of dissolution. Custody, parenting time, and other child-related matters are not at issue in this appeal.

On July 22, 2020, the district court entered a decree of dissolution based on a written agreement between the parties. The decree stated that neither party would receive alimony from the other, nor would they be "eligible for alimony to be awarded in the future." The decree awarded Leslie "100% of her military disability and any payment related thereto" and stated that the parties "shall split equally (50/50) [Leslie's] military pension." The decree also ordered Leslie to pay Brian "a monthly equalization payment" of $750 for a total of 59 months, under the section titled "EQUALIZATION PAYMENT."

Starting in July 2020, Leslie paid Brian $2,063 per month, representing 50 percent of Leslie's monthly payment received from the Defense Finance and Accounting Service (DFAS). Brian applied to DFAS to receive payment directly. In January 2021, Brian received a letter from DFAS denying his application because "[t]he entire amount of [Leslie's] retired/retainer pay is based on disability, and thus, there are no funds available for payment under [10 U.S.C. § 1408 (2018)]." After January 2021, Leslie stopped paying Brian the $2,063 monthly payment because she believed there was no "disposable military retirement" she was required to divide under the dissolution decree.

### 1. Brian's Motion to Alter or Amend

Brian filed a motion to alter or amend the decree of dissolution in February 2021, requesting the district court vacate the portions of the decree dealing with alimony and Leslie's military pension and disability. Brian alleged that Leslie had elected to receive the entirety of her military retirement as disability, thereby eliminating any military pension payments she would have to split with Brian.

Brian requested alimony in an amount equal to the $2,063 he had previously been receiving from Leslie. After an evidentiary hearing, the district court determined that Leslie had withheld information about the DFAS payments and it vacated the portions of the dissolution decree concerning the retirement payments, alimony, and the division of property. The district court found that it did not have enough evidence to make a ruling on issues of equitable property division and alimony and set the matter for an additional evidentiary hearing.

At the second evidentiary hearing, Leslie testified that she had a master's degree in nursing. She earned $58.36 an hour, or approximately $115,000 a year, working full time as a nurse practitioner at a medical facility. She also received around $5,000 per month from DFAS and around $3,500 per month from the U.S. Department of Veterans Affairs. At the time of the decree, she worked full time as a nurse practitioner at a different health center. She testified that at the time of the hearing, she still worked at that health center once a month. Leslie offered an exhibit listing her monthly expenses at over $15,000.

Leslie also testified to her debts around the time she filed for divorce in March 2019. Leslie testified that she has been the only person making payments toward these debts since the original decree. Leslie testified to several credit card debts, including $3,356 with Citi, $1,086.73 with PayPal, $3,941.50 with Ulta Beauty, $3,009.16 with USAA, $1,508.05 with Sam's Club, $2,975.05 with Bank of America, $5,185.92 with Chase, $4,215.75 with Old Navy, $116.04 with Kohl's, and $472.89 with Victoria's Secret. She also testified to an account with Nebraska Furniture Mart with an outstanding balance of $4,538.66 and a SoFi loan with a balance of $19,794.84.

Leslie testified to several debts valued after the parties had separated, but before the original dissolution decree. There was a Target credit card with a balance of $2,237.33 as of July 2020 and a Best Egg loan with a balance of $9,949.72 as

of October 2019. She testified that she owed over $11,000 in back taxes from 2019 when the parties were still married.

Brian testified that he had been working at a hospital since December 2019, earning approximately $15 an hour. He testified that the marital home was the parties' largest asset and that he did not possess any significant assets at the time of the second hearing. Brian offered an affidavit listing $3,765.30 in monthly income and $4,251 in monthly expenses. Brian did not work from 1997 to 2005 while he studied for a bachelor's degree in business. Brian worked until 2007, when the parties decided he would stay home to take care of the parties' children. Leslie testified that they had agreed Brian would return to work when the children were in school, but that he refused to return to work. Brian testified that it was difficult to restart his career because he was over 50 years old. Brian testified that he had been treated for colon cancer, but admitted it did not affect his ability to do his job. Brian also suggested that he may have access to Leslie's Social Security benefits in the future.

In April 2022, the district court modified the dissolution decree with respect to property division and alimony. The court divided the parties' assets and debts and required Brian to pay Leslie $7,500 to balance the distribution. The balance sheet attached to the district court's order did not include the Sam's Club, Ulta Beauty, Target, or USAA credit card debts or the 2019 tax debt. The court also ordered Leslie to pay Brian $2,000 in alimony for the life of the parties. It found that Brian's career was hampered by his childcare duties and frequent relocations due to Leslie's military service but that he also chose not to work for large periods of time. It noted the significant economic disparity between the parties. The court ordered Leslie to pay Brian $10,000 in attorney fees.

### 2. Leslie's Motion to Alter or Amend

Leslie filed a motion for new trial or to alter, amend, or reconsider the order modifying the dissolution decree. She

alleged that the court's order was contrary to the evidence presented. She alleged that the court erroneously credited several assets to her, failed to credit several debts to her, miscalculated the parties' incomes when determining the alimony award, and failed to make specific findings regarding the award of attorney fees.

In July 2022, the district court sustained Leslie's motion in part and denied it in part. The court adjusted the property division balance sheet to show a mortgage value of $420,759.94 and add the debts to Sam's Club, Ulta Beauty, and USAA. The order did not mention the 2019 tax debt or the Target credit card debt, nor did it include them in the attached balance sheet. The court also ordered Brian to pay back the $15,000 in property settlement payments that Leslie had paid since the original decree. These adjustments increased the equalization payment Brian was required to pay to Leslie to $25,436.04. The court limited the alimony award to 15 years rather than for the life of the parties.

Brian filed a motion to alter, amend, vacate, or reconsider the court's July 2022 order, challenging the court's division of property and claiming he was entitled to $28,000 in backdated alimony. After oral argument, the district court denied the motion. Brian appeals.

## III. ASSIGNMENTS OF ERROR

Brian assigns that the district court abused its discretion by reducing the duration of the alimony award to 15 years, instead of for the life of the parties, and by improperly valuing and dividing the marital estate.

## IV. STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.[1]

---

[1] *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021).

In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[2]

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[3]

## V. ANALYSIS

[1] In an action for dissolution of marriage, Neb. Rev. Stat. § 42-365 (Reissue 2016) allows the district court to "order payment of such alimony by one party to the other and division of property as may be reasonable." To determine such reasonable alimony award and division of property, the court may consider

> the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.[4]

The statute explains, "While the criteria for reaching a reasonable division of property and a reasonable award of alimony may overlap, the two serve different purposes and are to be considered separately."[5] "The purpose of property division is to distribute the marital assets equitably between the parties."[6] "The purpose of alimony is to provide for

---

[2] *Id.*

[3] *Id.*

[4] § 42-365.

[5] *Id.*

[6] *Id.*

the continued maintenance or support of one party by the other when the relative economic circumstances . . . make it appropriate."[7]

[2-4] We review a district court's determinations of alimony and division of property de novo on the record to determine whether there has been an abuse of discretion.[8] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[9] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[10]

Brian argues that the district court abused its discretion in limiting the alimony award to 15 years because it was a replacement for the DFAS payments, which had been awarded for life in the original decree. Brian argues the court abused its discretion in dividing the marital estate by including the Best Egg loan, ordering him to repay Leslie $15,000 for property equalization payments she made under the original decree, and ordering him to pay a substantial equalization payment when he was not awarded enough liquid assets to pay it. We hold that the district court's order was not an abuse of discretion because its determinations regarding alimony and property division were reasonable.

## 1. ALIMONY

[5-8] The reasonable duration of an alimony award depends on the specific facts in a given case, often the amount of time required to allow the recipient spouse to support himself or

---

[7] *Id.* Accord *Dooling v. Dooling*, 303 Neb. 494, 930 N.W.2d 481 (2019).

[8] See *Kauk, supra* note 1.

[9] *Id.*

[10] *Id.*

herself.[11] Alimony should not be used to equalize the incomes of the parties or to punish one of the parties.[12] Rather, the primary purpose of alimony is to assist an ex-spouse for a period of time necessary for that individual to secure his or her own means of support.[13] In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result.[14] The ultimate criterion is one of reasonableness.[15]

Brian points us to *Pyke v. Pyke*,[16] in which we upheld an award of alimony for the life of the parties, subject to future amendment by the court. Although we said that the lifetime award was reasonable in that case, we have also upheld alimony awards limited to a term of years, even where the recipient spouse's economic opportunities were limited by age and career delays.[17]

In *Bergmeier v. Bergmeier*,[18] for instance, we upheld an alimony award that would terminate at the latest after 8 years, when the recipient spouse turned age 65. During the marriage, the wife had quit her job as a teacher to stay home and raise the children.[19] She also obtained a master's degree in health

---

[11] See, e.g., *Bergmeier v. Bergmeier*, 296 Neb. 440, 894 N.W.2d 266 (2017); *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000); *Pyke v. Pyke*, 212 Neb. 114, 321 N.W.2d 906 (1982) (superseded by statute on other grounds as stated in *Polly v. Polly*, 1 Neb. App. 121, 487 N.W.2d 558 (1992)).

[12] *Kalkowski, supra* note 11.

[13] *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015).

[14] *Bergmeier, supra* note 11.

[15] *Id.*

[16] *Pyke, supra* note 11.

[17] See, *Bergmeier, supra* note 11; *Amen v. Amen*, 207 Neb. 694, 301 N.W.2d 74 (1981).

[18] *Bergmeier, supra* note 11.

[19] *Id.*

education during the marriage.[20] The husband worked as an insurance agent and was entitled to termination payments for life upon leaving that employment.[21] The trial court awarded the wife a share of the husband's termination payments to be paid out monthly once he began receiving them.[22] It also awarded the wife $2,000 in monthly alimony that would automatically terminate when she began receiving her share of the termination payments, turned 65 years old, remarried, or died, whichever occurred first.[23] The wife argued the alimony award was an abuse of discretion because she could turn age 65 before the husband would begin receiving the termination payments, so there could be a period of time where she would receive neither alimony nor her share of the termination payments.[24] We acknowledged that, at the time of our decision, the wife was 57 years old with "limited earning power."[25] However, we held that the trial court did not abuse its discretion because the wife would be eligible to receive Social Security payments upon turning 65 years old.[26]

Weighing the factors from § 42-365, it was reasonable for the district court to limit the alimony award to 15 years. Brian has a bachelor's degree in business and has held various jobs before and after taking time off work to care for the parties' children. And although Brian's career was interrupted by the parties' decision for him to stay home to care for their children, there was evidence that Leslie asked him to return to work when the children were of school age and he refused. Brian testified that his current income is not enough to cover his monthly expenses, but he presented no evidence that he

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 457, 894 N.W.2d at 278.

[26] *Id.*

will not be able to obtain better paying employment or another source of income in the next 15 years. Brian testified that he had been treated for cancer, but that it did not impair his ability to work; nor did he present evidence that it will affect his earning potential in the future. Leslie contributed the significant majority of the parties' income during the marriage. And while Leslie's earning potential is significantly greater than Brian's, she testified that her income will decrease after she retires. We note that Brian may also be able to receive Social Security benefits when he reaches retirement age. Under these facts, we cannot say that it was an abuse of discretion to limit the alimony award to 15 years.

We reject Brian's argument that he is entitled to alimony for life because it was awarded to make up for his share of the DFAS payment he was to receive for the life of the parties under the original decree. Those portions of the original decree dealing with the DFAS payment, alimony, and division of property were all vacated by the district court. The district court then determined a reasonable alimony award under § 42-365 for the first time without regard to the vacated portions of the decree. Because the 15-year alimony award gives Brian a reasonable opportunity to support himself, it was not an abuse of discretion.

## 2. Division of Property

[9] We also hold that the district court did not abuse its discretion in determining the contents of the marital estate and equitably dividing it. Under § 42-365, the equitable division of property is a three-step process.[27] The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage.[28] The second step is to value the marital assets

---

[27] *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023).

[28] *Id.*

and marital liabilities of the parties.[29] And the third step is to calculate and divide the net marital estate equitably between the parties.[30]

## (a) Best Egg loan

[10-12] The district court did not abuse its discretion by including the Best Egg loan in the marital estate on Leslie's motion to alter or amend. First, Brian failed to show that the Best Egg loan was not marital debt. Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate.[31] Marital debt includes only those obligations incurred during the marriage for the joint benefit of the parties.[32] The burden of proof rests with the party claiming that property is nonmarital.[33]

The district court reasonably concluded that the Best Egg loan was marital debt.[34] Leslie testified that she took out the loan during the marriage to pay off other marital debts. Brian offered no evidence to rebut this testimony.

[13,14] Second, we disagree with Brian's argument that the district court abused its discretion by classifying the Best Egg loan as marital debt because it was valued as of October 2019, when the other debts were valued closer to the date of separation in March 2019. The purpose of assigning a date of valuation in a dissolution decree is to ensure that the marital estate is equitably divided.[35] Frequently, a single valuation date will be appropriate; but sometimes it will not.[36] In reviewing a trial court's valuation of marital assets, we

[29] *Id.*

[30] *Id.*

[31] *Dooling, supra* note 7.

[32] *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018).

[33] *Dooling, supra* note 7.

[34] See *Vanderveer v. Vanderveer*, 310 Neb. 196, 964 N.W.2d 694 (2021).

[35] *Rohde v. Rohde*, 303 Neb. 85, 927 N.W.2d 37 (2019).

[36] *Id.*

have declined to mandate that a trial court must use only one valuation date in equitably dividing a marital estate.[37] The date for valuation must be rationally related to the property being divided.[38]

In *Dooling v. Dooling*,[39] we held that the trial court did not abuse its discretion in valuing the husband's employment benefit account over a year after the parties separated. The husband argued that an earlier account statement more accurately reflected the value of the account, but he did not offer the account statement into evidence.[40] Because the husband admitted that the asset was marital property and failed to present evidence of its value earlier than the account statement presented as evidence to the court, we found no abuse of discretion in the court's valuation date.[41]

Brian offered no evidence to show that the value of the Best Egg loan in March 2019 differed from its demonstrated value in October 2019. Because Brian offered no evidence that the Best Egg loan was not marital debt or that the October 2019 valuation did not reflect the value of the loan in March 2019, we cannot say that the district court abused its discretion by including the Best Egg loan in the marital estate.

### (b) Property Equalization

[15,16] The district court also did not abuse its discretion in requiring Brian to pay over $25,436.04 in property equalization. The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.[42] A district court

---

[37] *Id.*

[38] See *Blaine v. Blaine*, 275 Neb. 87, 744 N.W.2d 444 (2008).

[39] *Dooling, supra* note 7.

[40] *Id.*

[41] *Id.*

[42] *Id*.

generally has discretion to award each spouse between one-third and one-half of the marital estate.[43]

The district court acted within its discretion by dividing the marital estate equally. The balance sheet attached to the district court's order shows that Brian received one-half of the total marital estate, which included more debts than assets. Leslie received the marital home with the associated marital debt, resulting in over $17,000 in debt. Brian received a retirement account and a Best Buy credit card debt, resulting in over $3,500 in assets. To equalize these amounts, the district court ordered Brian to pay $10,436.04. After equalization, both parties were responsible for around $6,800 in debt. Given Leslie's significant contributions to the income of the parties during the marriage, we cannot say it was unreasonable to equalize the estate so that Brian would be responsible for at least an equal share.[44] The district court did not abuse its discretion in dividing the marital estate.

Having reasonably determined that the marital estate should be equally divided, the district court properly ordered Brian to repay Leslie for the $750 monthly property equalization payments she had made under the vacated decree, totaling $15,000. It was within the district court's reasonable discretion to order Brian to return the $15,000 so he would not receive a windfall due to the vacated decree and avoid responsibility for his fair share of the marital debts.

[17,18] We reject Brian's suggested interpretation of the $750 monthly payments as alimony despite the stipulated agreement and original decree labeling such payments as property equalization. A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a

---

[43] *Id.*

[44] See, *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000); *Keim v. Keim*, 228 Neb. 684, 424 N.W.2d 112 (1988).

matter of law from the four corners of the decree itself.[45] It is inherent to a judgment's finality that all are bound by the original language used, and all ought to interpret the language the same way.[46] The four corners of the decree clearly classify the $750 monthly payments as property equalization. The decree referred to them as "a monthly equalization payment" under the heading "EQUALIZATION PAYMENT." The decree also explicitly stated that no alimony was awarded. Brian asserts that the parties understood that the payments were alimony, but purposely mislabeled them to avoid the tax consequences. Even assuming this is the case, we will not enforce such an understanding that cannot be determined from the language of the decree.

[19,20] We also reject Brian's argument that the district court abused its discretion by ordering him to pay an equalization payment without awarding him sufficient liquid assets to cover the payment.[47] Under § 42-365, the court may take the economic circumstances of the parties into account and is not limited to the assets divided as part of the marital estate.[48] The statute clearly states that the purpose of a property division is to equitably distribute marital assets.[49] There is nothing in the language of § 42-365 that prevents the court from ordering an equalization payment without awarding liquid assets from the marital estate.

Accordingly, we have found that an equitable distribution of property required equalization payments greater than the liquid assets awarded to the paying party.[50] In *Meints*

---

[45] *Bayne v. Bayne*, 302 Neb. 858, 925 N.W.2d 687 (2019).

[46] *Id.*

[47] See, *Dooling, supra* note 7; *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017); *Meints, supra* note 44.

[48] See *Dooling, supra* note 7.

[49] § 42-365.

[50] *Osantowski, supra* note 47; *Meints, supra* note 44.

*v. Meints*,[51] for instance, we determined that the equitable distribution of marital assets required the wife to make a property equalization payment despite her receiving no liquid assets from the marital estate. The district court had awarded the wife net assets over $36,000 while making the husband responsible for approximately $25,000 in net debts.[52] We held that this division of property was an abuse of discretion because it failed to equitably distribute the parties' marital debts.[53] Although the wife was not awarded any liquid assets, we held that the wife had to pay over $28,000 to equalize the division of property.[54]

Brian's reliance on the Nebraska Court of Appeals' decision in *Verzal v. Verzal*[55] is misplaced. The Court of Appeals determined that it was an abuse of discretion under the specific facts of that case to order a cash equalization payment in excess of liquid assets instead of making a qualified domestic relation order (QDRO) to divide the husband's retirement account.[56] The Court of Appeals did not determine that a trial court can never order an equalization payment in excess of a party's liquid assets. Additionally, *Verzal* is factually distinguishable from the present case. The trial court in *Verzal* had classified the husband's retirement account as a marital asset but awarded it in its entirety to the husband. The trial court then ordered the husband to pay a cash equalization payment of over $57,000.[57] The Court of Appeals held that the trial court abused its discretion by ordering the equalization payment rather than dividing the retirement account through

---

[51] *Meints, supra* note 44.

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Verzal v. Verzal*, 29 Neb. App. 904, 962 N.W.2d 563 (2021).

[56] *Id.*

[57] *Id.*

a QDRO.[58] Brian does not argue that his retirement account should have been classified as marital property or that the court should have used a QDRO to divide it. Therefore, *Verzal* is inapplicable to the facts of this case.

The district court reasonably divided the parties' assets and debts and determined that Brian owed $25,436.04 to equalize the division. The court was not required to ensure that Brian received liquid assets from the division of the marital estate sufficient to cover this payment. We also note that Brian did not show he is unable to make the equalization payment. Brian did not claim that he no longer possesses any of the $15,000 he received from Leslie since the original decree. And although it was not included in the marital estate, the record shows that Brian has access to a retirement account with a balance over $68,000. He was also awarded $10,000 in attorney fees. The district court did not abuse its discretion by ordering Brian to pay $25,436.04 to Leslie to equalize the division of marital property.

## VI. CONCLUSION

The district court did not abuse its discretion by limiting the alimony award to 15 years or in classifying and dividing the marital estate.

Affirmed.

---

[58] *Id.*