IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ULLERICH V. ULLERICH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MONICA ULLERICH, APPELLEE,

V.

P.B. ULLERICH, APPELLANT.

Filed April 30, 2024.   No. A-23-496.

Appeal from the District Court for Douglas County: J RUSSELL DERR, Judge. Affirmed as modified.

Matthew P. Saathoff and Jacob A. Acers, of Saathoff Group, P.C., L.L.O., for appellant.

Kelly T. Shattuck, of Vacanti Shattuck, for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

MOORE, Judge.

INTRODUCTION

P.B. Ullerich (hereinafter "Brad") appeals from the decree of dissolution entered by the district court for Douglas County, dissolving his marriage to Monica Ullerich. Brad primarily challenges the district court's valuation and division of real and personal property. We affirm as modified.

STATEMENT OF FACTS

Monica and Brad were married in March 2001 and have one child, born in May 2005. The parties separated, and Monica filed a complaint for dissolution, in October 2020.

In a temporary order entered in June 2021, the district court awarded the parties joint legal custody of the child but reserved a physical custody determination. The temporary order noted that the child was exclusively residing with Brad and set forth a weekend parenting time schedule.

- 1 -

Another temporary order entered by the district court in April 2022, set Monica's monthly child support obligation at $303. A basic income and support calculation was attached to the order.

On May 11, 2023, Brad filed his "Suggestions to the Court," which requested that the parties be awarded joint legal custody of the child with Brad having final decisionmaking authority. Brad also requested sole physical custody and "no set parenting time, as the minor child will be going to college in the Fall of 2023."

Trial was held before the district court over 2 days in May 2023. The following evidence was adduced, and additional details will be set forth as necessary in our analysis below.

Both parties testified consistently that they would share legal custody of the child and that Brad would be awarded physical custody. The parties noted that the child would be moving out of state to attend college in a few months. Neither party testified to the need for a parenting plan.

Both parties offered proposed child support calculations. Monica's calculation placed her monthly child support obligation at $406. Monica noted that her calculated support had increased from the temporary obligation of $303 because she was no longer carrying Brad on her employer health insurance plan and Brad now had a cost for his own insurance. Brad offered two calculations, depending on whether a bonus of $1,500 Monica had received in 2022 was factored into her income, which set Monica's monthly obligation at either $440 or $450. Brad also offered a third calculation based upon another annual salary estimate which set Monica's obligation at $437. Brad requested that Monica's obligation be retroactive to November 2022, when Monica stopped carrying Brad on her insurance.

The parties own four pieces of real property, all of which were acquired during the marriage. The property includes a marital home and three rental properties: the Northampton Apartments in Omaha, the Entrada Townhome in Utah, and the Redcliff Apartment in Utah.

The parties testified consistently that the rental properties were largely managed by Brad. The management of the Northampton Apartments is Brad's primary source of income. Brad testified that he was licensed to do business in Utah as a vacation rental owner and that he did not believe Monica was similarly licensed. Monica estimated that she had spent at most 8 hours working at the Utah properties since they were purchased by the parties 6 years ago, and 40 hours working at the Northampton Apartments since the complex was purchased 17 years ago. For the last decade Monica has been employed full-time by an Omaha non-profit organization.

Both parties offered their respective proposed property division and corresponding documentation including bank statements, real estate appraisals, and valuations for various vehicles, firearms, and household items. The parties agreed to the valuation of all of their real property. The marital home had an appraised value of $434,000, with no associated debt; the Northampton Apartments had an appraised value of $5,660,000, with $3,722,410 of associated debt; the Entrada Townhome had an appraised value of $950,000, with no associated debt; and the Redcliff Apartment had an appraised value of $505,000, with $176,381 of associated debt. Brad testified that the loans on the Northampton and Redcliff Apartment were held by him exclusively.

The parties jointly offered a stipulation from a tax expert, who, if called, would testify to the sizeable tax implications of a forced sale of the rental properties. Both parties testified that the tax consequences, real estate commissions, and prepayment penalties outweighed the benefits of selling any of the properties.

Monica testified to her amended proposed property division, which would have her receive the marital home, the Entrada Townhome, and the Redcliff Apartment, subject to its debt. Brad would receive the Northampton Apartments, subject to its debt. Monica's proposed division of the real estate would provide her with roughly $1.7 million in net equity and would provide Brad with approximately $1.9 million in net equity. Should the district court award her the Utah properties, Monica testified that she intended to sell the marital home and live in the Entrada Townhome. She also indicated that she had someone interested in buying the Redcliff Apartment.

Brad testified to his proposed property division, by which he would receive the Northampton Apartments and the Entrada Townhome, and Monica would receive the marital home and the Redcliff Apartment. Brad also requested that the district court divide the marital estate into a one-third, two-thirds split rather than evenly, as he believed that the rental properties would not have increased in value if not for his work and that Monica did little to add value to the assets. Brad also requested that the district court allow him 18 months to make an equalization payment to Monica in order for him to refinance the properties.

Brad testified that he also sought an award of the Entrada Townhome for sentimental reasons. Brad has been visiting the Utah property for over 20 years and enjoys hiking, mountain biking, and off-roading. He intended to relocate to the Entrada Townhome should he be granted the property. Brad recalled that in an earlier deposition, Monica did not want "anything to do with [the Utah] properties," and that Monica had spent only 5 nights during the parties' marriage in Utah. Brad believed that Monica intended to sell the Utah properties.

The parties held eight bank accounts across four financial institutions: Charter West Bank, Wells Fargo, Ally Bank, and TD Ameritrade. They agreed that the three Charter West Bank accounts were used to manage the Northampton Apartments. Brad testified that the two Wells Fargo accounts were used to manage the Utah rental properties. An Ally Bank saving account was described by Brad as "another reserve account," which he was using to hold insurance money for repairs to the Northampton Apartments. Brad also held two individual retirement accounts at TD Ameritrade, which he agreed were marital.

Both parties offered bank statements and valuations for the various bank accounts. Brad's offered bank statements were dated April-May 2023. Brad stated that he was providing "the most recent bank statements right before trial" as he was managing an active business with money flowing in and out of the accounts. Monica agreed that the bank accounts associated with the rental properties would fluctuate in value. She offered bank statements dated November-December 2022 and testified that the statements were the most recent copies she had been provided by Brad. Monica's valuation of four of the marital bank accounts was higher than Brad's.

Brad also requested certain household items. Monica indicated that several of Brad's personal items were boxed up and sitting in the garage of the marital home. Monica had asked Brad to pick up the boxes several times during the parties' separation.

On June 8, 2023, the district court entered a decree of dissolution. The court approved the parties' agreement on joint legal custody of the child with Brad being awarded primary physical custody. The court stated that due to the child's age and graduation date, no specific visitation was requested or ordered. The decree set Monica's monthly child support obligation at $406 and denied Brad's request for a retroactive increase. A child support worksheet was not attached to the decree.

The district court found that Monica's valuation of the parties' bank accounts was accurate and it utilized her amended proposed property division for the basis of its distribution of the marital accounts.

The district court also used Monica's amended proposed property division as to the parties' real estate. Monica was awarded the marital home and the two Utah properties, and Brad was awarded the Northampton Apartments. Additionally, the real estate awarded to each party was to be transferred with all personal property contained therein. The decree was silent as to the debt associated with the Northampton and Redcliff Apartments.

In its property distribution, the district court set the total equity of the marital estate "as of December 2022." Brad was ordered to make a $565,145.21 equalization payment to Monica.

During a post-decree hearing in August 2023, the parties and the district court had a discussion regarding the lack of an attached child support calculation worksheet. Brad indicated that he intended to raise the issue of retroactive support on appeal. Both parties agreed that the lack of a parenting plan in the decree was not an issue.

Brad appeals.

## ASSIGNMENTS OF ERROR

Brad assigns, restated, that the district court erred by (1) failing to attach a parenting plan to the decree; (2) failing to include a child support calculation within the decree; (3) utilizing a separate date for the valuation of the Ally Bank account; (4) awarding Monica the Utah properties; (5) failing to require that Brad be removed from the loan on the Redcliff Apartment; and (6) failing to award Brad his personal property from the marital home.

## STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## ANALYSIS

*Parenting Plan.*

Brad first assigns that the district court erred by failing to attach a parenting plan to the decree. He argues that though the district court made a determination regarding the child's legal and physical custody, the court failed to address the elements required for a parenting plan under the Nebraska Parenting Act.

Neb. Rev. Stat. § 43-2929(1) (Reissue 2016) states in part that "[w]hen a parenting plan has not been developed and submitted to the court, the court shall create the parenting plan in accordance with the Parenting Act." Here, the parties agreed that Brad would have physical custody and that a parenting plan was not necessary, as the child, who was 18 years old at the time of the decree, would be attending college out-of-state in a matter of months.

Generally, a party cannot complain of error which the party has invited the court to commit. *Keiser v. Keiser*, 310 Neb. 345, 965 N.W.2d 786 (2021). In Brad's suggestions to the district court,

filed 4 days before trial, he requested that the district not make a determination regarding "set parenting time[.]" No evidence regarding a parenting plan was adduced at trial and neither party requested that the district court create a parenting plan.

Under the circumstances of this case, the district court did not abuse its discretion in failing to include a parenting plan in the decree. This assignment of error fails.

*Child Support Calculation.*

Brad assigns that the district court erred by failing to include a child support calculation within the decree.

In determining a parent's child support obligation, a trial court should endeavor to remain faithful to the goals and methodology of the child support guidelines and should set forth its calculations sufficiently to allow for meaningful appellate review. See *Keiser v. Keiser, supra.* Through the worksheets, supplemented where necessary by related findings, "the trial courts must show the appellate courts, and the parties, that they have 'done the math.'" *Id.* (quoting *Stewart v. Stewart*, 9 Neb. App. 431, 434, 613 N.W.2d 486, 489 (2000)). Here, the district court set Monica's monthly child support obligation at $406, presumably adopting the calculation offered by her at trial, although the court did not attach a child support worksheet to the decree or explicitly set forth its calculation within the decree or as an attached worksheet. The general rule regarding child support worksheets was set forth in *Rutherford v. Rutherford*, 277 Neb. 301, 308, 761 N.W.2d 922, 927 (2009), in which the Nebraska Supreme Court held that "the record on appeal from an order imposing or modifying child support shall include any applicable worksheets with the trial court's order. Failure to include such worksheets in the record will result in summary remand of the trial court's order."

Brad does not assign error to the amount of Monica's child support obligation. Though he indicated at a post-decree hearing that he would raise the issue of retroactive support on appeal, he has not done so. While the district court failed to include a child support worksheet, given the circumstances of the case discussed above, we do not find this to be a reversible error. This assignment of error fails.

*Ally Bank Account Valuation Date.*

Brad assigns that the district court erred in the date it used for the valuation of the Ally Bank account. He contends that the use of the December 8, 2022, date for the Ally Bank account was not rationally related to the property being divided and that the difference in value between the December 8, 2022, value, offered by Monica, and the May 2, 2023, value, offered by Brad, inflated the total marital estate by an amount of $53,604.23.

Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023). The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. *Id.* The second step is to value the marital assets and marital liabilities of the parties. *Id.* And the third step is to calculate and divide the net marital estate equitably between the parties. *Id.*

The purpose of assigning a date of valuation in a dissolution decree is to ensure that the marital estate is equitably divided. *Karas v. Karas*, 314 Neb. 857, 858, 993 N.W.2d 473, 476

(2023). The date for valuation of property included in the marital estate in a dissolution decree must be rationally related to the property being divided. *Id*.

The district court states that it had valued the assets of the marital estate as of December of 2022. The court also found that Monica's "valuations for the accounts and all property as shown in Exhibit 129 are accurate." Exhibit 129 is Monica's amended proposed property division which reflects that the parties owned eight marital accounts at four financial institutions. The amended proposed property division includes a summary of the various bank statements Monica offered at trial to evidence the valuations for the accounts. Monica testified that the late 2022 bank statements were the most recent versions she had been provided with by Brad.

Brad argues that in its decree, the district court utilized valuations from 2023 for other assets and only used a valuation date of December 8, 2022, for the Ally Bank account. In our review, it appears that the district court utilized 2023 valuations for certain assets in the marital estate, such as the parties' vehicles and specific real property, none of which values are at issue in this appeal. However, all of the bank account valuations used by the district court are from Monica's amended proposed property division which summarized bank statements from late 2022.

The parties' respective proposed property divisions placed the same value on the TD Ameritrade accounts, but Monica valued the Charter West Bank checking account, the two Wells Fargo accounts, and the Ally Bank account at higher amounts than Brad. The accounts held at Charter West Bank, Wells Fargo, and Ally Bank were all used to manage the parties' rental properties. Both parties agreed that the bank accounts associated with the rental properties would fluctuate in value, given that the accounts were used to collect rental payments and hold money to be used for repairs. Here, Brad challenges only the valuation of the Ally Bank account, however, he did not provide evidence regarding why the Ally Bank account balance was reduced by $53,604.23 from December 2022 to May 2023.

We conclude that the court's adoption of the late 2022 bank account valuations was consistent and rationally related to the property being divided. While the court used 2023 values for other assets, the parties did not present differing valuation dates for those assets. See *Karas v. Karas, supra*. This assignment of error fails.

*Award of Utah Properties.*

Brad assigns that the district court erred in granting Monica the two Utah properties. He argues that Monica does not have appropriate licenses to manage the properties commercially, and that Monica did not want either property. Brad requests the award of the Entrada Townhome.

There was no dispute that the four pieces of real property at issue in this case were marital property and there was no dispute regarding their valuation. The district court awarded Brad the Northampton Apartments ($1,937,590) and awarded the remaining marital properties, including the two Utah properties and the marital home to Monica (combined award of $1,712,619).

The district court rejected Brad's proposal that he be awarded both the Northampton Apartments and the Entrada Townhome. The court observed that Brad's proposal requested that he have up to 18 months to pay Monica her share of marital equity, but that the ability of Brad to obtain refinancing for the properties was speculative, thus exposing Monica to some risk of payment, which was inequitable. The court found that Monica's proposed division of the real estate ensured that none of the properties had to be sold. Both parties testified that any sale of property

would result in high transaction costs including prepayment penalties, commissions, and significant tax obligations. The district court found that Monica's proposal avoided these transaction costs. The district court also rejected Brad's proposal to divide the marital estate in a one-third, two-thirds split, finding that Monica had solely financially supported the family in the early years after Brad had purchased the Northampton Apartments and was not yet drawing a salary.

We further note that Monica demonstrated an interest in the Utah properties for her own personal or commercial use. Monica testified that though she had seldom visited the Utah properties, if she was awarded the properties, she intended to sell the marital home and relocate to Utah to live in the Entrada Townhome. At the post-decree hearing, Monica's counsel also indicated that she had recently hired a commercial property company to manage rentals for the Utah properties.

The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Karas v. Karas*, 314 Neb. 857, 993 N.W.2d 473 (2023). Given that awarding Monica the two Utah properties ensured a timely and equitable division of the marital estate, we cannot say the district court abused its discretion in this regard. This assignment of error fails.

*Redcliff Apartment Debt.*

Brad assigns that the district court erred in granting Monica the Redcliff Apartment without also ordering that Brad be removed from the property's loan.

The parties agreed that the Redcliff Apartment had an appraised value of $505,000 with associated debt of $176,381 for $328,619 of total equity. The district court used the $328,619 net value when dividing the marital estate and awarding the Redcliff Apartment to Monica. However, Brad testified that he alone held the loan on the Redcliff Apartment and Monica did not contradict this testimony.

We agree with Brad that Monica should have been ordered to take the necessary steps to assume the loan or refinance the debt on the Redcliff Apartment in her name only. We modify the decree to order Monica, within 90 days of the issuance of the mandate from this appeal, to assume the loan or refinance the debt on the Redcliff Apartment in her name only. In the event that Monica decides to sell the property and is able to close the sale within 90-120 days from the date of the mandate, refinancing would not be necessary.

*Brad's Personal Property.*

Finally, Brad assigns that the district court failed to award him his personal property from the marital home.

Brad offered an inventory of household goods from the marital home that included over 60 specific items Brad sought to be awarded by the district court. The items included a treadmill and weight equipment, furniture items, televisions, a Ring Video Doorbell, a Nest Thermostat, speaker systems, tools, various firearms, and a gun safe. Brad also requested that the court award him premarital property which remained in the marital home including a pinball machine, a grandfather clock, and a filing cabinet.

Monica testified that Brad's personal property had been boxed up, placed in the garage, and available for Brad to retrieve for the last 3 years, with repeated requests from her to do so.

The district court did award Brad specific items he requested, including the weights, treadmill, pinball machine, grandfather clock, and a gun case. Although the court awarded Monica all of the property inside of the marital home, the decree also states that each party should keep the property "in his or her current possession with the exception of personal items of [Brad] boxed and located in the garage[.]" We find no abuse of discretion by the district court in its division of personal property.

## CONCLUSION

Given the circumstances of this case, we do not find the district court's failure to attach a parenting plan or include a child support calculation within its decree to be reversible error. We find no abuse of discretion in the valuation and division of the marital estate. We modify the decree of dissolution to order Monica to assume the loan or refinance the debt on the Redcliff Apartment in her name only unless she is able to close a sale of the property as set forth above. The decree is affirmed in all other respects.

AFFIRMED AS MODIFIED.