IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

McReynolds v. McReynolds

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

Jeanie M. McReynolds, now known as Jeanie M. DeWitt, appellant,

v.

Samuel K. McReynolds, appellee.

Filed May 26, 2026.    No. A-25-448.

Appeal from the District Court for Gage County: RICKY A. SCHREINER, Judge. Affirmed.

Lyle Joseph Koenig for appellant.

Alex M. Lierz, of Nebraska Legal Group, for appellee.

RIEDMANN, Chief Judge, and BISHOP and FREEMAN, Judges.

RIEDMANN, Chief Judge.

## I. INTRODUCTION

Jeanie M. McReynolds, now known as Jeanie M. DeWitt, appeals from the order of the district court for Gage County, which found her to be in contempt of the payment provisions of the dissolution decree that dissolved her marriage to Samuel K. McReynolds. For the reasons stated herein, we affirm the district court's order.

## II. BACKGROUND

In May 2024, the district court entered an order that dissolved Jeanie and Samuel's marriage. The order explained that, based on the marital property distribution, Samuel owed Jeanie an equalization payment of $15,585.49. However, because Jeanie had withdrawn funds from a line of credit and used a company credit card for personal expenses after the date of valuation used by the parties, these were post-separation expenses and she owed Samuel $30,885.94 as a reimbursement. Thus, after crediting the equalization payment owed by Samuel, Jeanie was

- 1 -

ordered to pay Samuel an equalization payment of $15,027.45. She was also ordered to pay him $12,500 in attorney fees. Both judgments were required to be paid within 90 days of the entry of the decree. Jeanie appealed from the divorce decree and the appeal was docketed in our court. See *McReynolds v. McReynolds*, A-24-413.

While Jeanie's appeal was pending, Samuel filed a verified motion for an order to show cause why Jeanie should not be held in contempt for violating the decree. Samuel's motion asserted that Jeanie had not filed a motion to set a supersedeas bond while her appeal was pending and had failed to pay him either the equalization payment or attorney fees within 90 days of the entry of the divorce decree. He asked that she be held in contempt for failing to follow the decree.

Samuel also asserted that, after the decree was entered, Jeanie continued to use his credit card and make cash advances from the home equity line of credit even though he had been awarded the residence, its mortgage, and the home equity loan secured by the residence, in the court's distribution of their marital property. Samuel requested Jeanie be ordered to reimburse him for the credit card charges and cash advances.

Jeanie filed a motion in resistance to Samuel's motion to show cause. She alleged that she did not have the financial means to pay the amount ordered by the divorce decree. She also asserted that because Samuel was "intimately familiar" with her financial situation and knew she was incapable of paying the judgment, he "should be sanctioned for filing a motion that [had] no other purpose than to vex and stress" her. Jeanie additionally requested Samuel be ordered to pay her attorney fees.

The court issued an order to show cause in November 2024 and an evidentiary hearing was held in March 2025. After the hearing, the district court entered an order finding Jeanie to be in contempt of the divorce decree because she had not timely paid the equalization payment and attorney fees to Samuel. The court specifically found that Jeanie was financially capable of making these payments but had failed to do so.

The court also ordered Jeanie to repay Samuel for the debt she incurred by using his credit card and taking cash advances on the line of credit. It ordered her to pay Samuel $1,000 in attorney fees, which he incurred during the contempt proceedings. The contempt order imposed a sanction of 30 days in jail, which Jeanie could purge herself of by making $500 monthly payments to Samuel until the $15,027.45 equalization payment and $13,500 in attorney fees were paid in full (which includes the fees awarded in the contempt action). Jeanie appealed from the contempt order in June 2025, which is presently before us.

We released our opinion resolving Jeanie's appeal from the divorce decree in July 2025. See *McReynolds v. McReynolds*, 33 Neb. App. 733, 24 N.W.3d 906 (2025). As is relevant to Jeanie's current appeal from the contempt order, we vacated the court's division of the marital estate, including the equalization payment. See *id*. We remanded the matter to the district court for further proceedings "to determine whether there was any increase in the value of [Samuel's company] caused by active appreciation during the marriage and, if so, to value that increase and equitably divide the marital estate." *Id.* at 746, 24 N.W.3d at 919. We affirmed the district court's award of $12,500 in attorney fees to Samuel. See *id*.

## III. ASSIGNMENTS OF ERROR

Jeanie assigns, restated, that the district court erred by finding her in contempt for (1) conduct not prohibited by the divorce decree and (2) not paying the equalization payment and attorney fees ordered in the divorce decree.

## IV. STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and of the sanction imposed are reviewed for abuse of discretion. See *Hawks v. Hawks*, 32 Neb. App. 70, 993 N.W.2d 688 (2023).

## V. ANALYSIS

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018). A court's continuing jurisdiction over a dissolution decree includes the power to provide equitable relief in a contempt proceeding. *Id*. Contempt proceedings may both compel obedience to orders and administer the remedies to which the court has found the parties to be entitled. *Id*. Where a situation exists that is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation. *Id*.

Civil contempt requires willful disobedience as an essential element. *Id*. "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id*. If it is impossible to comply with the order of the court, the failure to comply is not willful. *Id*. Willfulness is a factual determination to be reviewed for clear error. *Id*. Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence and without any presumptions. *Id*.

### 1. DISTRICT COURT DID NOT FIND JEANIE IN CONTEMPT FOR CONDUCT NOT PROHIBITED BY DECREE

Jeanie argues that the district court erred by finding her in contempt for her use of the credit card and the line of credit because "the divorce decree did not give [her] a clear warning that her conduct was proscribed." Brief for appellant at 12.

Contrary to Jeanie's argument, the court's order explicitly stated that it did "not find [Jeanie] in contempt of court for incurring an additional $3,042.01 in credit card debt on [Samuel's] credit card after [the divorce] trial." Also, the order stated that "an equitable remedy [was] warranted" for the $2,775.07 she had incurred by taking out cash advances against the home equity line of credit after the divorce decree was entered; it did not state the court had found her in contempt for this reason. Rather, the court found her in contempt only for her "willful and contumacious [] failure to pay $15,027.45 in equalization payment and $12,500.00 in attorney fees within ninety (90) days of entry of the decree."

Because the court did not find Jeanie to be in contempt for using the credit card or taking cash advances against the line of credit, this assigned error fails.

### 2. Court Did Not Err by Finding Jeanie in Contempt for Failure to Pay Equalization Payment and Attorney Fees

Jeanie argues that the district court erred by finding her in contempt of the divorce decree for failing to pay the equalization payment and the attorney fees to Samuel. She asserts that her failure to pay the judgment was not willful. She also contends that the equalization payment was rendered void by our opinion in *McReynolds v. McReynolds*, 33 Neb. App. 733, 24 N.W.3d 906 (2025), and that she therefore cannot be in contempt for failing to pay it.

### (a) Jeanie Willfully Failed to Pay Judgment

Jeanie argues the court erred by finding her in contempt because her failure to pay her obligations to Samuel was not willful, as she was financially incapable of doing so. However, the district court's order explicitly found that Jeanie was financially capable of paying the judgment.

At the end of the contempt evidentiary hearing, the court referenced a truck and a camper and explained that it had intentionally given Jeanie enough assets in the divorce proceedings to pay the equalization payment, post-separation expenses, and attorney fees. The court elucidated that if Jeanie had traded in the truck for its ascribed value of $46,000 and used the proceeds to pay the $27,527.45 owed to Samuel, she would have had $18,472.55 left over to replace the vehicle. We observe a similar statement in the court's written order.

The record shows that Jeanie recognized the truck's monetary value. She valued the truck at $43,000 during the divorce proceedings, and she testified at the contempt evidentiary hearing that she had attempted to use the truck as collateral to obtain a loan. However, despite knowing that the truck's value exceeded the amount she owed, Jeanie did not attempt to trade it in for a less expensive vehicle.

Moreover, the court also stated at the contempt evidentiary hearing that Jeanie had received a camper in the divorce proceedings. We recall from Jeanie's prior appeal that this camper was valued at $66,000 in Samuel's proposed property distribution and was ultimately set aside as Jeanie's post-separation asset in the decree. See *McReynolds v. McReynolds*, A-24-413. See *Burns v. Burns*, 293 Neb. 633, 879 N.W.2d 375 (2016) (allowing judicial notice of documents filed in appeal in separate but related action concerning same subject matter in same court). However, despite the camper's value exceeding the amount of Jeanie's obligations under the decree, there is no indication that Jeanie attempted to sell it.

Although Jeanie contends that she "did her best" to pay the judgment because she had twice attempted to borrow the money to do so and was rejected, this claim is at least partially refuted by the record. Brief for appellant at 15. Jeanie's first request for the loan against the truck was made on April 10, 2024. The divorce decree was not entered until May, and Jeanie did not yet owe Samuel the equalization payment or attorney fees. She thus could not have sought this loan for the purpose of paying the judgment. Regardless, the evidence indicates Jeanie was financially capable of paying her debts to Samuel without obtaining a loan.

By virtue of the divorce decree itself, Jeanie was aware that she owed Samuel $27,527.45. Jeanie received physical assets in the divorce proceedings that were worth substantially more

money than the amount due under the judgment. See *Karas v. Karas*, 314 Neb. 857, 993 N.W.2d 473 (2023) (explaining court may order equalization payment without awarding any liquid assets from marital estate). She was thus financially capable of paying it. Nonetheless, Jeanie did not attempt to use these assets to satisfy her obligations and failed to make any payments toward the judgment.

For these reasons, the district court did not clearly err by finding that Jeanie's failure to pay the equalization payment and attorney fees to Samuel was willful. We reject her argument to the contrary.

(b) Equalization Payment Was Valid and Enforceable
Judgment While Appeal Was Pending

Jeanie also points us to our opinion in *McReynolds v. McReynolds*, 33 Neb. App. 733, 24 N.W.3d 906 (2025), in which we vacated the district court's division of the marital estate, including the equalization payment. Jeanie argues that the finding of contempt related to her failure to pay the equalization payment is erroneous because she "cannot be held in contempt for not paying a void judgement [sic]." Brief for appellant at 14 (citing *Becher v. Becher*, 311 Neb. 1, 970 N.W.2d 472 (2022)).

We initially note that *McReynolds, supra*, was not released until July 2025. Thus, the equalization payment had not yet been vacated, and was not void, when Jeanie failed to meet the 90-day payment deadline, nor when the district court found Jeanie to be in contempt for failing to pay this portion of the judgment.

Additionally, Jeanie did not file a motion to set a supersedeas bond to stay the judgment while her appeal from the divorce decree was pending. The effect of a supersedeas bond is to either maintain an order in force or prevent execution of an order until the case is finally heard and determined. See *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018) (quoting *Waite v. City of Omaha*, 263 Neb. 589, 594-95, 641 N.W.2d 351, 355 (2002)). In the absence of a supersedeas, a judgment or final order retains its vitality and is capable of being executed during the pendency of the appeal. *Production Credit Assn. of the Midlands v. Schmer*, 233 Neb. 785, 448 N.W.2d 141 (1989).

Thus, because Jeanie's appeal was still pending and there was no supersedeas bond, the provision of the divorce decree that required she pay the equalization payment was valid and enforceable when the district court entered its contempt order. See *id*. Therefore, the district court was entitled to enforce the terms of the decree. See *Spady v. Spady*, 284 Neb. 885, 824 N.W.2d 366 (2012). See, also, *Hall v. Hall*, 176 Neb. 555, 126 N.W.2d 839 (1964) (stating enforcement of nonsuperseded orders and judgments is in district court). We find that a court cannot abuse its discretion by finding a party to be in contempt of an order which is presently valid and enforceable, simply because that order could possibly be vacated in the future.

Regardless, we recognize that on remand of case No. A-24-413, the equalization payment was ultimately reinstated by the district court. See *McReynolds v. McReynolds*, A-25-813. As previously stated, we may take judicial notice of documents filed in an appeal in a separate but related action concerning the same subject matter in the same court. See *Burns v. Burns*, 293 Neb. 633, 879 N.W.2d 375 (2016). After the district court reinstated the judgment on remand, Jeanie appealed again. See *McReynolds v. McReynolds*, A-25-813. We therefore take notice of the district

court's order finding no increase in the value of Samuel's company and reinstating the equalization payment that had been vacated on appeal. See *id.*

For these reasons, the district court did not abuse its discretion by finding Jeanie to be in contempt of the divorce decree for failing to pay Samuel the equalization payment and attorney fees. This assigned error fails.

## VI. CONCLUSION

We affirm the order of the district court finding Jeanie to be in contempt of the divorce decree and ordering her to reimburse Samuel for her post-decree expenses.

AFFIRMED.